JOHNSTONE v. RICHMOND, &c., R. R. COMPANY.

1. LAW CASES—FACTS—APPEAL.—In an action at law, instituted in a Trial Justice Court and carried by appeal to the Court of Common Pleas, this court cannot review findings of fact by the Circuit Judge.

2. COMMON CARRIERS—LOSS—EXEMPTIONS—ONUS PROBANDI.—A common car-

rier is liable for the non-delivery of goods entrusted to his carriage, unless they have been lost by the act of God or the public enemies, or from some cause specially excepted in the contract of carriage, other than the carrier's negligence, as to which the law does not allow a contractual exemption. And the burden of proof is upon him to show that the loss did result from some one of these legally recognized exceptions to the general rule of liability.

3. IBID.—IBID.—CONTRACTUAL VALUE.—But where a shipper of goods agrees by special contract upon a value to be placed upon such goods in case of loss, and in consideration thereof obtains a reduced rate of transportation, he is bound by such stipulation, and is estopped from showing that the real value of the goods was greater than that specified in the contract.

4. IBID.—IBID.—IBID.—CASE CRITICISED.—This rule applies as well to special contracts, fixing a value upon all property of a given class, as to those which specify the value of particular articles. Hart *v.* Pennsylvania Railroad Company, 112 U. S., 331, stated.

5. IBID.—SPECIAL CONTRACT—ACCEPTANCE.—There being no fraud or misrepresentation by the carrier or its agent, the shipper cannot repudiate the terms of a written contract with the carrier, which was signed by him without reading because not ready for signature until the time arrived for taking the train.

6. IBID.—IBID.—FREE TRANSPORTATION.—A shipper cannot claim a violation by the carrier of the contract for carriage of stock by reason of the carrier's failure to give him free transportation on passenger trains, where the contract stipulated for his free transportation on "the train with said stock," which transportation was never applied for or refused.

7. NEW TRIAL NISI granted by the Supreme Court in a law case.

Before FRASER, J., Newberry, March, 1892.

Action by Alan Johnstone & Co. against the Richmond and Danville Railroad Company, commenced December 17, 1890.

*Mr. J. F. J. Caldwell,* for appellant.

*Messrs. Johnstone & Cromer,* contra.

April 4, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.   This was an action to recover damages for the loss of four hogs shipped by the plaintiffs over the road of defendant company, to be delivered at Newberry, South Carolina. The case was originally instituted in the Trial Justice Court, carried thence by appeal to the Circuit Court,

and from thence brought to this court by this appeal. The undisputed facts are that, on or about the 25th of November, 1890, J. C. Myers, one of the members of the plaintiffs' firm, shipped a lot of 233 hogs at Lenoirs, in the State of Tennessee, to be transported by the East Tennessee, Virginia and Georgia Railway and its connecting lines, the defendant being such connecting line, to Newberry, South Carolina; that the cars containing such hogs were delivered to the defendant at Paint Rock, North Carolina, and upon arriving at Asheville, North Carolina, a station on defendant's line, three of the hogs were found to be dead, and when the train reached Alston, South Carolina, another hog was found to be dead; so that only 229 hogs were delivered at Newberry, the point of destination.

It seems that these hogs were shipped under a special contract, signed by the said Myers, a copy of which is set out in the "Case," which contained amongst other things the following stipulations: that the hogs were "to be shipped upon the following contract, terms and conditions, which are admitted by me to be just and reasonable;" that in consideration of the transportation of said live stock "at the reduced rate of ninety-eight dollars per car load from Lenoirs to Newberry, S. C., and furnishing free transportation to the owner, or his agent, on the train with said stock" * * * "and I further agree that the said East Tennessee, Virginia and Georgia Railway and all connecting transportation companies shall not be, and shall not be held, liable for any loss, injury, damages or depreciation which the animals, or either of them, suffer in consequence of either of them being weak, or escaping, or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or of being injured by fire, or the burning of any material, while in the possession of said railway or any connecting transportation company; and I expressly release said East Tennessee, Virginia and Georgia Railway and connecting transportation companies from all other damages incidental to the railroad or water transportation of said stock, which shall not be established by positive evidence to have been caused by the negligence of some officer or agent of said East Tennessee, Virginia and Georgia Railway or connecting

8—39

transportation companies. And I further agree that in the event said East Tennessee, Virginia and Georgia Railway or any of said connecting transportation companies shall become or be held liable, for any reason or any account, for any injury to, or of the death of any of said stock, the valuations of injury or loss shall in no event exceed the following: For stallions or jacks, $200 each; for horses or mules, $100; for cattle, $30 each; and for other stock, $5 each."

When the plaintiffs offered testimony in the Trial Justice Court, tending to show that the hogs lost were worth, at the point of delivery, about $25 each, the testimony was objected to, and the objection was overruled. This ruling was subsequently affirmed by the Circuit Judge. We need not go into any statement of the testimony introduced in the Trial Justice Court as to the cause of the death of the hogs, as that was a question of fact, which we cannot consider in a case like this. The verdict being in favor of the plaintiffs for the full amount claimed, $99, that being the amount shown by the testimony objected to, as above stated, to be the actual value of the hogs at the point of delivery, the defendant appealed to the Circuit Court, and his honor, Judge Fraser, affirmed the judgment of the Trial Justice Court, holding that while the common law liability of a common carrier may be limited by special contract, yet the carrier cannot exempt himself from liability for loss occasioned by his own negligence, nor can he by such contract shift the burden of proof upon the shipper, either to show that the loss was due to negligence, or that it was occasioned by some one of the causes which might be legally excepted by special contract. He also added, as his conclusions from the testimony, that it "does not show, in any manner at all satisfactory to my mind, what was the real cause of the death of these hogs. There has been a failure to show that there was no negligence on the part of the defendant."

From this judgment defendant appeals, upon the several grounds set out in the record, which need not be repeated here, as all, except those which raise mere questions of fact, which we cannot consider in a law case like this, present, practically, but two questions: 1st. Whether the

Circuit Judge erred in holding that a carrier cannot, by special contract, limit his liability so as to exempt him from responsibility for losses occasioned by his negligence. 2d. Whether he erred in holding that a carrier cannot, by special contract, limit the amount of damages which may be recovered against him for injuries sustained by reason of his negligence.

It seems to us that the first question is conclusively answered adversely to the appellant, by a recent decision of this court, in the case of *Wallingford & Russell* v. *Railroad Company,* 26 S. C., 258. There the rule, to which we adhere, is laid down in these words: "At common law, there is no exemption to the liability of common carriers for goods, &c., entrusted to them, except for an act of God or of the king's enemies. They are regarded as insurers as to all else. In England, however, and in several States of this Union, including our own (South Carolina), the common law doctrine was modified to the extent of allowing a common carrier to exempt himself from this broad liability, by special contract, as to certain specified causes of injury. See, in this State, *Swindler* v. *Hilliard & Brooks,* 2 Rich., 286; *Baker* v. *Brinson,* 9 *Id.,* 202, and other cases which need not be cited. It was, however, held in all of the cases, that he could not shield himself from the consequences of negligence by a contract; that his character as common carrier could not be changed by contract; only his liability, to the extent of the specified exemptions, was diminished. In all things else, the general doctrine of common carriers applied, and especially as to negligence; and further, that the *onus* was upon him to bring himself by the testimony within the exemptions mentioned in the contract;" and, also, as is said further on in the same case, to negative negligence on his part.

Hence, as is said in the same case: "A common carrier is bound to deliver the property which he undertakes to transport at the point of discharge safe and uninjured at the peril of liabilities, except where the injury has resulted from some cause excepted in a contract (other than negligence), which is a matter of defence, the *onus* of proving which is on the defendant. The plaintiff has nothing to do but to show the injury, and the defendant becomes at once *prima facie* liable, and re-

mains so until he shows that said injury resulted either from an act of God, the public enemies, or a cause from which he had exempted himself legally in a special contract." In view of these principles of law thus authoritatively announced, and in view of the conclusion of fact reached by the Circuit Judge, which is binding on us in a law case, that the testimony was not sufficient to show from what causes the death of the hogs ensued, and, therefore, not sufficient to show that such death resulted from any of the excepted causes; and that there was a failure to negative negligence on the part of the defendant, we do not see how it is possible to doubt that the plaintiffs were entitled to judgment for some amount, but what that should be depends upon the answer to the second question stated above.

Upon that question we are absolutely without authority in this State, and it is conceded that elsewhere the authorities are conflicting. It seems to us, however, that both reason and the weight of authority are in favor of the rule that, where a shipper of goods by special contract agrees upon a value to be placed upon such goods in case of loss, and in consideration thereof obtains a reduced rate of transportation, he is bound by such stipulation, and is estopped from showing that the real value of the goods was greater than that specified in the contract. The general rule undoubtedly is, that where a person laboring under no disability enters into a contract, he is bound by its terms, however improvident the contract may turn out to be, unless he has been induced to enter into such by the fraud or misrepresentation of the other contracting party, or unless the contract is in violation of some law or contravenes some settled principle of public policy. While, therefore, the law, from considerations of public policy, will not permit a common carrier to contract for exemption from liability for losses occasioned by his own negligence, yet we know of no rule of law and no settled public policy which forbids a shipper from settling by contract what shall be the measure of damages he may be entitled to claim in case of the loss of the articles shipped. What is the value of a given article is a pure question of evidence, with which the law has nothing to do;

and we see no reason why parties may not, by special contract, agree to dispense with the necessity for offering testimony as to the value of such articles, just as they may, by agreement or admission, dispense with the necessity for offering testimony as to any other fact material to a controversy.

But when, as in this case, the shipper has obtained an advantage, in consideration of which he has fixed the value of the property shipped, the case becomes still stronger. The shipper having reaped the advantage obtained by the special contract, must, as a matter of common justice, bear the burden which such contract imposed. Here the plaintiffs, *"in consideration"* of "the reduced rate of ninety-eight dollars per car load," have agreed, that in case of loss the carrier shall be liable only for the valuations stated in such agreement, to wit: "for hogs, $5 each.". For, as was well said in the case of *Graves* v. *Lake Shore and Michigan Southern Railroad Company*, 137 Mass., 33, reported, also, in 50 Am. Rep., 282: "If a person voluntarily represents and agrees that the goods delivered to a carrier are of a certain value, and the carrier is thereby induced to grant him a reduced rate of compensation for the carriage, such person ought to be barred by his representation and agreement. Otherwise he imposes upon the carrier the obligations of a contract different from that into which he has entered." But we need not pursue the discussion, as the case of *Hart* v. *Pennsylvania Railroad Company*, 112 U. S., 331, in which the whole subject is fully discussed, and the authorities both *pro* and *con* are collated, fully sustains our view.

Counsel for respondents has very ingeniously undertaken to draw a distinction between a case where the special contract fixes a value upon all property of a given class, and where the agreement is made as to the value of the particular article for the loss of which the action is brought, and claims that the case of Hart, just cited, which is properly conceded to be a leading case, really belongs to the latter class. We do not so understand that case. On the contrary, the special contract there relied upon was so much like as to be practically identical with the special contract here relied upon—at least, so far as the question under immediate consideration is

concerned. There the action was brought to recover damages for the loss of one horse and the injury to four others, besides certain other property not specified. The contract was for the transportation of "one car, five horses, shipper's count, which has been received by said company for themselves and on behalf of connecting carriers for transportation, upon the following terms and conditions, which are admitted and accepted by me as just and reasonable: First, to pay freight thereon to said company at the rate of ninety-four cents per one hundred pounds (company's weight), and all back freight and charges paid by them, on the consideration that the carrier assumes liability on the stock to the extent of the following agreed valuation: "If horses or mules, not exceeding two hundred dollars each. * * * If a chartered car, on the stock and contents in same, twelve hundred dollars for the car load." On the trial the plaintiff offered testimony to show that the actual value of the horses, which seemed to have been race horses, far exceeded the value stated in the special contract. The testimony was rejected, upon the ground that by the plain agreement of the parties the valuation was fixed at the amount stated in the special contract, and the case went to the Supreme Court, where the error assigned was in the rejection of the testimony as to the real value of the horses.

The ruling of the court below was sustained, and after an elaborate discussion of the whole subject, Mr. Justice Blatchford concluded his opinion in these words: "The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations." There is nothing whatever in the case showing that there was an agreement as to the value of these particular horses, or that the court based its

conclusion upon any such distinction as that sought to be drawn. On the contrary, the whole question, as in this case, turned upon the effect of the general stipulation as to the value of all stock of a specified class, as contained in the bill of lading or special contract.

Counsel for respondent also contends that there was really no special contract in this case to which the shipper can be regarded as having assented; and the ground of this contention seems to be that the shipper signed the contract hurriedly and without reading it. We do not understand that it is contended that the shipper was induced to sign the contract by any misrepresentation on the part of the carrier or his agent, for there is not a particle of evidence to sustain such a contention. But the ground seems to be, that the agent of the carrier did not have the contract ready for the shipper's signature until he went to the office to get his ticket to enable him to leave on the passenger train, when he signed the contract hurriedly and without reading it. We do not think that this was sufficient to excuse non-compliance with the terms of the contract. The shipper was not obliged to sign the contract without reading it, and if he saw fit to do so, he must take the consequences. *Germania Fire Insurance Company* v. *Memphis & Charleston Railroad Company*, 72 N. Y., 90; s. c. 28 Am. Rep., 113; *Hill* v. *Syracuse, &c., Railroad Company*, 73 N. Y., 351; s. c. 29 Am. Rep., 163. As was said by Mr. Justice McGowan in *Bethea* v. *Railroad Company*, 26 S. C., at page 96: "It would tend to disturb the force of all such contracts, if one, in possession of ordinary capacity and intelligence, were allowed to sign a contract and act under it, in the enjoyment of all its advantages, and then to repudiate it upon the ground that its terms were not brought to his attention. In the absence of all fraud, misrepresentation, or mistake, it must be presumed that he read the contract and assented to its conditions."

Finally, it is urged by respondents' counsel that appellant cannot avail itself of the benefit of the terms of the special contract, because there was no evidence that it had performed its part of the contract, because it did not offer free transportation to the shipper, and did not otherwise

fulfil its part of the contract—in what particular is not stated, and, therefore, cannot be considered. It will be observed that by the terms of the special contract, the shipper was entitled to free transportation, *not* upon the *passenger* train of defendant, but upon "*the train with said stock;*" and if the shipper saw fit to travel on the passenger train, where he was not entitled to free transportation, instead of on the train with the stock, where he would have been entitled to free transportation, it cannot be properly said that defendant has failed to comply with its part of the contract, especially as there is no evidence that the shipper applied for, and was refused, free transportation on the train on which he was entitled to such privilege.

It seems to us, therefore, that while there was no error of law in holding that the plaintiffs were entitled to recover, there was such error in holding that they were entitled to recover anything more than the amount stipulated for in the special contract.

The judgment of this court is, that the judgment of the Circuit Court be reversed, unless the plaintiffs shall, within ten days after written notice of this judgment, enter upon the record a *remittitur* of so much of the amount recovered as exceeds the sum of twenty dollars; but if the *remittitur* is so entered, then that the judgment of the Circuit Court, as thus reduced, be affirmed.