THE CENTRAL RAILROAD & BANKING CO. *v.* BRIDGER:

1. In order for a common carrier by whom the transportation begun on a preceding connecting line is to be completed, to take the benefit of a special contract between the shipper and the initial

carrier, limiting liability in case of loss to a stipulated value per hundred pounds, it must appear either that the contract was such as to bind the initial carrier for full performance, so as to make the second carrier the agent of the first, or else that the reduced rate forming the consideration of the special contract was not confined to the line of the first carrier, but was, either by the contract itself or by the act of the second carrier in rating and billing the goods over his line, extended and applied to that line also.

2. A special contract expressed in a bill of lading and in the written assent of the shipper to its terms, which relates to a consignment of goods from a given point on one railway to a given point on another, and which purports on its face to be a through bill of lading but expressly limits the undertaking of the first company to performance on its own line, with no further duty on its part but to deliver to the connecting line, and which names no rate of freight further than the terminus of the first line, but expressly excludes any guaranty of a rate beyond that point, does not bind the first company, the one with which the contract was made, to complete, either by itself or by the second company as its agent, the whole transportation. And although the contract provides on its face for extension to the second company, at the option of the latter, of the benefits secured to the former in consequence of the reduced rate, yet, it not appearing that the second company availed itself of this privilege by shipping the goods over its line at a reduced rate, and the goods having been destroyed by fire upon that line, presumably by reason of negligence on the part of this company, the latter is liable to account therefor to the owner at full value, there being, so far as appears, no consideration to uphold any agreement with it, express or implied, to accept the conventional value agreed upon with the first company and specified on the face of the bill of lading.    *Judgment affirmed.*

April 9, 1894.  Argued at the last term.

Action for damages.  Before Judge JENKINS.  Wilkinson superior court.  April term, 1893.

Mrs. Bridger obtained a verdict against the Central Railroad Co. for the admitted market value of goods shipped by her from Toccoa, Ga., by the Richmond & Danville Railroad Co., to be carried from there to Atlanta, and thence by defendant's line to Gordon, Ga. The goods were received in good order by defendant from the Richmond & Danville Co., and were destroyed by fire while in defendant's possession at Sunnyside station.  It does not appear how the fire occurred.  De-

fendant moved for a new trial on the general grounds,. and because the court ruled that the bill of lading under which the goods were shipped was not an express contract as between plaintiff and defendant; that plaintiff was not bound by the valuation expressed in the bill of lading; and that any benefits that might belong to the Richmond & Danville Co. thereunder, would not inure to the benefit of defendant. The motion was overruled. The bill of lading (which was signed for the shipper as well as for the carrier) purports to be a through bill of lading.   The material parts of it are as follows:

"Marked, R. Bridger, Gordon, Ga. Rates guaranteed only from Toccoa to Atlanta, at 33 cts. per hundred pounds. Received of Mrs. R. Bridger, in outward apparent good order, inward condition of contents unknown, and for which (viz. condition of contents) this. company or any of its connections to place of delivery shall not be responsible, ———— pkgs., value unknown,. to be transported by the Richmond and Danville Railroad Company to ————, thence by connecting lines. to ————, Ga.," (enumerating the packages) "supposed to be marked and numbered as per margin, to be transported as above specified, and delivered to the agents of the connecting railroad companies or steamer, and by them to be delivered to the next connecting railroad or steamer, and in like manner to be delivered to each connecting railroad company or steamer until said goods or merchandise shall reach the point named in the receipt.   As the packages aforesaid must pass through the custody of several carriers, it is understood, as a part. of the consideration on which said packages are received, that the exceptions from liability made by such carriers. respectively shall operate, in the carriage by them respectively of said packages, as though herein inserted at length. . . And it is expressly understood, that. for all loss or damage occurring in the transit of said

packages, the legal remedy shall be against the partic-
ular carrier in whose custody the said packages may ac-
tually be at the time of the happening thereof; it be-
ing understood that the Richmond & Danville Railroad
Company, in receiving the said packages to be forwarded
as aforesaid, assumes no other responsibility for their
safety or safe carriage than may be incurred on its own
road, and it is expressly confined to the roads and sta-
tions of the Richmond & Danville Railroad Company.
. . . And in case of loss or damage to any of the
goods named in this bill of lading, for which the Rich-
mond & Danville Railroad or connecting railroad com-
panies, or the railroads, steamers or forwarding lines
with which they connect, may be liable, it is agreed and
understood that they shall have the benefit of any insur-
ance effected by or for account of the owner of said
goods. . ." Across the face of the bill of lading was
written: "Released and value lim. to $5.00 per cwt. in
case of total loss."

Lawton & Cunningham, for plaintiff in error.
Washington Dessau and J. W. Lindsey, contra.