### HARBY v. SOUTHERN RY. CO.

1. A CONNECTING CARRIER IS ENTITLED TO THE BENEFIT OF THE LIMITING VALUE CLAUSE in special contract by the shipper with initial carrier for transportation of live stock in suit against it for loss or damage to the stock, where the contract provides that the connecting carrier may have the benefit of such valuation.

2. TIME FOR DELIVERY OF FREIGHT.—When no time is expressly agreed upon for delivery of freight it must be transported with all reasonable diligence.

Before WATTS, J., Sumter, November Term, 1905. Reversed. From judgment for plaintiff, defendant appeals.

*Mr. E. M. Thomson,* for appellant, cites: *Appellant is entitled to the benefits of the limited valuation clause:* 39 S. C., 55; 112 U. S., 331; Elliott on R. R:, sec. 1446; 68 S. W., 469; 10 L. R. A., 418; 7 Am. St. R., 111. *As to diligence in transportation:* 6 Cyc., 442, 443.

*Messrs. Lee & Moise,* contra, cite: *Contract limiting value is only binding when signed by shipper who is owner:* 112 U. S., 331; 39 S. C., 63; Hutch. on Car., 2 ed., secs. 261 and 275. *Effect of through bill of lading:* 6 Cyc., 481; 10 R., 382; 26 S. C., 258; Elliott, 1435.

October 25, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The complaint herein alleged three causes of action—the first for $750, damages to a carload of horses and mules, twenty-six in number, alleged to have been received by defendant as a common carrier and insurer at Birmingham, Ala., October 8, 1904, and delivered in Sumter, S. C., October 11, 1904, in bad condition, scarred, bruised and some lamed, one mule having died from injuries received; the second cause of action was for the same amount of damages for injuries to said stock as the result of defendant's alleged negligence in handling and transporting said

animals; and the third cause of action was for the statutory penalty of $50, for failure to adjust and pay the claim filed within ninety days. The defendant company received the shipment October 8, 1904, from Kansas City & Memphis R. R. Co. at Birmingham, Ala., in apparently good condition, but delivered the same to plaintiff at Sumter, S. C., in bad condition. One mule died from injuries received some time after delivery to plaintiff, which was valued in the testimony at from $165 to $175. In giving estimates as to the damages, witness W. B. Boyle, for defendant, stated the damages to be from $250 to $300, exclusive of the value of the mule which died, while the witnesses for plaintiff made estimates as follows: W. S. Graham $485, J. P. Booth $600, C. W. Stansall $750, exclusive of the dead mule, W. B. Blanding $600, and the plaintiff $1,000, including the animal which died. The jury rendered a verdict for plaintiff for $600, and defendant appeals from the judgment thereon upon three exceptions to the charge to the jury.

The first and second exceptions to the charge raise the question whether in this case the defendant as connecting carrier is entitled to the benefits of the limited valuation clause in the special contract made by the shipper with the initial carrier.

The testimony was to the effect that Charles W. Stansall, as agent for plaintiff, bought stock from the Erwin Piper Horse & Mule Company at Fort Scott, Kansas, and was present when they were put in car there for shipment by the St. Louis & San Francisco R. R. Co. The original bill of lading was produced by plaintiff and introduced in evidence by defendant without objection. It was signed by St. Louis & San Francisco R. R. Co. and by Erwin Piper Horse & Mule Company, as shipper. The shipment was therein referred to as "consigned to A. D. Harby from Fort Scott, Kansas, Station to Memphis, Tenn., Station, on the line of the company, and at said last named station to deliver the same to a carrier whose line may form a part of the route to Sumter, S. C., hereinafter called the place of destination."

In consideration of a special reduced rate the shipper agreed upon a valuation of each head of horses and mules at $100 from Fort Scott, Kansas, to Memphis, Tenn., and $75 per head from Memphis, Tenn., to Sumter, S. C., the agreement declaring that this "valuation is named by me for the purpose of securing a reduced rate of freight on this shipment, and I agree that in case of loss or damage to the same, said reduction so named shall be conclusive should I make any claim for such loss or damage against any carrier over whose line the same may pass."

The stipulation to which special attention is directed is as follows: "8th. It is mutually agreed that if the destination of the aforesaid cars be on the line of the St. Louis and San Francisco Railroad Company, then the St. Louis and San Francisco Railroad Company agrees to deliver same to consignee after payment of charges and surrender of contract; but if the destination of such cars be beyond the lines of the St. Louis and San Francisco Railroad Company, then the St. Louis and San Francisco Railroad Company agrees, and each connecting carrier in turn is hereby authorized to deliver said cars to connecting carrier for transportation under the terms, stipulations, limitations anad agreements in respect of such further transportation as may be agreed upon between the shipper and such connecting carrier or carriers: *Provided,* That if no other such contract be required or executed to cover the movement of the shipment over the line of any carrier in the route, then such carrier shall have the benefit of all the stipulations and conditions of this contract, it being understood that this contract is thereby adopted by the shipper and such carrier as the contract providing for their mutual rights and obligations, but, nevertheless, each carrier in the route shall be liable only for loss or damage occurring on its own road.

"10th. It is further agreed that neither the company nor any carrier over whose line this stock may be transported shall be liable for any injury to said stock in any amount above the actual damage thereto, nor in any amount in excess

of the value thereof as stated in the application of the shipper, which is hereto attached and made a part thereof, and in case of total loss of said stock or any portion thereof, and claim therefor is made by the shipper against the company, or any connecting carrier, wherein the value of said stock may be material, the valuation named in said application shall be conclusive upon all parties hereto."

There was no evidence of any other contract of shipment between the shipper and connecting carriers.

The charge to which exception is taken is as follows: "I charge you further, as matter of law, that if this stock was shipped by some one else to Mr. Harby from Fort Scott, Kansas, and if he made a contract whereby they were relieved or liability was limited, that contract was only good over that road, over the initial road, and not good over this road here. They have not sued the initial road, but they have sued the road here. The defendant road here cannot avail itself of any contract that was made at Kansas with a road there which was a separate and distinct road other than this one here." We think this charge was erroneous, as the effect was to deprive the defendant of the limited valuation clause in the special contract. That such a contract may be lawfully made is settled by our case of *Johnstone* v. *Railroad Co.*, 39 S. C., 56, 17 S. E., 512, approving the doctrine of *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S., 331.

A delivery of goods to the carrier by the shipper or consignor ordinarily vests title in the consignee. The consignor is presumed to have authority to enter into a contract of shipment with the carrier, and the real owner will be bound by any just and reasonable stipulation limiting the carrier's liability on the contract made by such agent. 4 Elliott on Railroads, sec. 1507. This is especially so if the owner and consignee accept the benefits of the special contract. The agreement in question puts the plaintiff as consignee in contract relation with the initial carrier and imposed upon such carrier duties with respect to the shipment which the plaintiff could enforce under the contract,

but subject to the reasonable limitations upon such liability therein stipulated, as well as the stipulation with reference to connecting carriers. With respect to the effect of the initial carrier's contract on connecting carriers, in 4 Elliott on Railroads, sec. 1446, the rule is thus stated: "If a connecting railroad company is designated in the initial carrier's bill of lading, or if the bill provides that all stipulations shall enure to the benefit of all the carriers, then having accepted the goods thereunder without any separate agreement, it becomes virtually a party to the contract, bound by the undertakings therein and benefited by the limitations." This statement of the law is supported by the authorities cited, some of which are: *Maghee* v. *Camden & Amboy R. R. Co.,* 45 N. Y., 514, 6 Am. Rep., 124; *Halliday* v. *St. Louis etc. Ry. Co.,* 74 Mo., 159, 41 Am. Rep., 309; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *W. Eakly,* 50 Ark., 397, 7 Am. St. Rep., 104; *Adams Express Co.* v. *Harris* (Ind.), 21 N. E. Rep., 341; *Central Railroad & Banking Co.* v. *Bridges* (Ga.), 20 S. E. Rep., 349. The error in the charge was prejudicial because it cannot be said with certainty that the verdict for $600 does not include $165 or $175 for the value of the animal which died.

The third exception alleges error in instructing the jury that if defendant received the stock at Birmingham, Ala., it was its duty to transport them "as speedily and carefully as possible." It is contended that this imposed upon defendant a higher duty than the law requires, and that it was prejudicial because the complaint charged negligence in handling and transporting said animals from Birmingham, and there was conflict in the testimony as to the time usually required for such shipments. The contract of shipment provided that the stock was "not to be transported within any specified time, nor delivered at any particular hour, nor in season for any particular market" The correct rule in such cases is that when no time is expressly agreed upon, the goods must be transported with all reasonable diligence. *Nettles* v. *R. R. Co.,* 7 Rich., 190; 6 Cyc.,

442. However, considering the charge of the Court in connection with the qualifying words immediately following, imposing the duty of "ordinary, reasonable care," we do not consider that the Court materially departed from the correct rule as stated.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.