6802

WINSLOW BROS. & CO. v. ATLANTIC COAST LINE R. R. CO.

1. CARRIER—FREIGHT—LIVE STOCK—EVIDENCE.—Under bill of lading limiting value of live stock to $100 in case of loss or damage, it is not error to admit evidence that animal injured was of greater value than $100, but no greater recovery than $100 for injury can be given.

2. IBID.—IBID.—INTEREST.—Under penalty statute, interest on actual loss sustained in damage to freight may be given from time of filing claim, whether the amount of damage be less or greater than amount stated in claim filed.

3. CHARGE.—Stating date of filing claim for damages to freight and amount of claim, there being no issue as to either, is not on the facts.

4. CONSTITUTIONAL LAW.—Section 1710, Code 1902, in so far as it imposes the duty to trace shipment as condition of exemption from liability is constitutional.

5. IBID.—The penalty statute, 24 Stat., 81, is not unconstitutional as an attempt to regulate interstate commerce.

6. IBID.—The agency statute, 24 Stat., 1, is unconstitutional where applied to interstate shipments.

7. CARRIER—FREIGHT—CONNECTING LINES.—The charge here as to liabiltiy of carrier for loss on connecting line was defective in that it omitted so much of Section 1710, Code 1902, as exonerates carrier

from liability on connecting line, if, after due diligence, it is unable to trace the line upon which damage occurred. If information furnished consignee of freight at time of delivery as to damage on connecting line is the same as that he would have received of terminal carrier after due diligence, jury may relieve terminal carrier of liability.

8. NEW TRIAL *nisi* granted because error in charge permitted the jury to find $100 for loss of mule on connecting carrier and $50 penalty which should not have been included, as recovery should not have been for as much as claim filed.

Before KLUGH, J., Sumter, April, 1907.    Reversed.

Action by Winslow Bros. & Co. against Atlantic Coast Line Railroad Company. From judgment for plaintiffs, defendant appeals.

*Messrs. P. A. Willcox, Mark Reynolds* and *Lucian McLemore,* for appellant. *Messrs. Willcox* and *McLemore* cite: *As to the provisions of the contract limiting the value of the animals:* 72 S. C., 375; 39 S. C., 55; 112 U. S., 331; 137 Mass., 33; 15 L. R. A., 534. *Act, 24 Stat., 1, held unconstitutional:* 78 S. C., 42. *Code 1902, 1710, is valid.* 75 S. C., 276; 78 S. C., 36, 42.

*Mr. L. D. Jennings,* contra, cites: *Under Section 1710, Code 1902, defendant is liable because did not inform consignee when loss occurred, in forty days:* 75 S. C., 276; 53 S. C., 496. *Delivery in damaged condition is presumptive of damage on line of defendant:* 66 S. C., 477; 77 S. C., 317. *Verdict should be sustained, as errors, if any, were harmless:* 78 S. C., 73, 167.

March 17, 1908.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    This suit was brought to recover damages for loss of one mule and injury to three others, aggregating $422.50, while in transit from Kansas City,

Mo., to Sumter, S. C., and for the statutory penalty of fifty dollars for failure to adjust and pay the claim within ninety days from the filing thereof. Judgment upon verdict was entered for $455.40.

We will not consider in detail appellant's twenty-five exceptions, several of which were withdrawn on the hearing, but will consider the material and controlling questions involved in the appeal.

1. In the bill of lading introduced in evidence by plaintiffs, the parties agreed upon $100 as the value of each mule, and there was a stipulation that in consideration of a reduction in freight, the liability of the carrier or carriers shall not exceed that sum per head in case of loss or injury to said live stock. The claim as filed by plaintiffs with the defendant company was for—

One mule thrown out of the car at Nash-
  ville, Tenn. .................................$147.50
Injury to sorrel mule in hind legs........ 100.00
Injury to black horse mule in hind legs... 75.00
Injury to black mare mule in one hind leg. 25.00
                                           ----------
Aggregating. ..............................$347.50

As to the third item, the complaint alleged injury to the extent of $100, and as to the fourth item injury to the extent of $75, aggregating $422.50. The Court allowed plaintiff to offer testimony to show that the value of the mule was $175, with a view to show the extent of the injury to the damaged mules, and exceptions are taken to this ruling upon the ground that plaintiffs are estopped by their contract to claim for any mule a greater value than $100. There is no doubt that plaintiffs are estopped by their contract from claiming a greater sum than $100 per head for loss or injury to their stock (*Johnstone* v. *R. R. Co.*, 39 S. C., 55, 17 S. E., 512); but the testimony was not admitted for the purpose of allowing a greater recovery per head than such sum, but to enable the jury to properly

estimate the damage done to each animal within the limit specified, and to this end it was proper to show the actual value of each animal. The contract merely provides that the liability of the carrier shall not exceed $100 per head "in case of loss or injury to said live stock," which does not mean that you must start out with $100 as the actual value of each animal and then estimate the injury by reference to a percentage of that value, but the inquiry is, How much was the particular animal injured by reference to its actual value when delivered to the carrier, subject to the limitation that recovery shall not exceed the sum stipulated? On the trial, the plaintiff withdrew all claim over $100 for the mule which died, leaving $375 as the amount for which recovery was sought, and the Court instructed the jury that no recovery could be had as damages for a greater sum than $100 for loss or injury to any mule.

2. The Court instructed the jury that if they should find for plaintiff damages to the amount of $347.50, the plaintiff was further entitled to interest on such sum, or any less sum they might find, from January 31, 1906, the time of the filing of the claim, but that plaintiff could not recover interest on any sum greater than $347.50, the amount of the claim as filed, even though plaintiff should establish damages to the amount of $375, as claimed in the complaint. The statute, after providing for the filing of the claim for damages, declares: "In every case such common carrier shall be liable for the amount of such loss and damage, together with interest thereon from the date of the filing of the claim therefor until the payment thereof."

The statute further provides: "That unless such consignee or consignees recover in such action the full amount claimed, no penalty shall be recovered, but only the actual amount of the loss or damage, with interest, as aforesaid." As we construe the statute, interest on the amount of the actual loss established is recoverable from the time of the

filing of the claim, whether the amount of such loss be greater or less than the amount for which the claim was filled, but that no penalty is recoverable unless the full amount for which the claim was filed is recovered.

The charge, therefore, was not unfavorable to appellant so far as the question of interest was concerned, nor do we consider the charge was in respect to matters of fact, as there was no dispute as to the fact that the claim for $347.50 was filed with the defendant January 31, 1906.

3. The Court refused appellant's request to charge that Section 1710, Civil Code, in so far as it imposed the duty to trace shipments as a condition of exemption from liability, is unconstitutional as in violation of the interstate commerce clause of the Federal Constitution. This question has been determined against appellant's view in *Skipper* v. *Seaboard Air Line R. R. Co.*, 75 S. C., 276, and *Venning* v. *A. C. L. R. R. Co.*, 78 S. C., 42.

4. The Court refused appellant's request to charge that the penalty statute of February 23, 1903, 24 Stat., 81, is unconstitutional as an attempt to regulate interstate commerce. The case of *Charles* v. *Atlantic Coast Line R. R. Co.*, 78 S. C., 36, and several other cases affirming the same, sustained the ruling of the Court.

5. The Court also refused to charge that the Act of May 13, 1903, 24 Stat., 1, is unconstitutional in so far as it involves the regulation of an interstate shipment of freight.

Under the decision in *Venning* v. *Atlantic Coast Line R. R. Co.*, 78 S. C., 42, this instruction should have been given. The harmfulness of the error involved in the refusal to give this instruction is made manifest by reference to the next proposition.

6. The Court instructed the jury, at the request of plaintiff's counsel: "If you find that the animal was not lost by the Atlantic Coast Line Railroad Company, but you find

that it was lost by some other railroad company, then the Atlantic Coast Line Company would still be responsible for it by our statute unless it informed the plaintiff within forty days after they filed their claim, that is, 31st of January, 1906, when and where and by which carrier the loss occurred or was caused."

The charge ignored the provisions of Section 1710, which exonerate the terminal carrier from liability for loss not occurring on its line, if, after due diligence, it is unable to trace the line on which the loss occurred, and by such charge the defendant was deprived of the defense afforded it by the statute by being thus made absolutely and unconditionally liable, even though the loss did not occur on its own lines, if it failed to inform the shipper when, where and by which carrier the loss occurred. The effect of this instruction was practically to leave the liability of the defendant with respect to the animal thrown out by a connecting carrier to be determined under the statute declared void as to interstate shipments in the Venning case.

While it is true the burden was on the carrier to show that the loss of a mule from a single shipment, a carload of mules, did not occur on its lines (*Walker* v. *Ry. Co.*, 76 S. C, 308; *Venning* v. *Ry. C.*, 78 S. C., 48), the evidence was very strong, if not conclusive, that the lost mule died in a car or stock-pen at Nashville, Tenn., and never came into the possession of the defendant, which received, at its connection at Augusta, Ga., a car containing only twenty-five mules. Nor is there much room for serious doubt that plaintiffs were promptly informed of the loss of the mule at Nashville, Tenn., since that information was stated on the receipt for freight given plaintiffs January 22, 1906, two days after the arrival of the car at Sumter, and the claim filed by plaintiffs on January 31, demanded damage for loss of mule thrown out of car at Nashville, Tenn. If this information was not as specific as that regarded by Section 1710, defendant would still be entitled to have the jury exon-

erate it as to this particular loss, if the information given was all that it could give after the exercise of due diligence.

7. The amount of the verdict is explainable only on the theory that the jury allowed $375, the amount of the damages claimed, with interest on $347.50, the amount of the claim as filed, from time of filing to time of verdict, together with the penalty of $50, which aggregate $455. The $375 includes $100 for the dead mule and $275 for damages to the three injured mules.

There was some evidence tending to support the claim of damages to the three injured mules to the extent of $275. The presumption was that this injury occurred while the mules were in the possession of the defendant, and there was testimony that the twenty-five mules, when delivered to the defendant at Augusta, Ga., were in apparently good condition. Hence the verdict to the extent of $275 and interest from January 31, 1906, if possible should stand. But the errors in the charge affect the verdict to the extent of $100 and interest, allowed for the dead mule thrown out at Nashville.

The right to recover the penalty depends upon whether plaintiff should recover for the dead mule and the damaged mules to the full extent of the amount of the claim as filed, $347.50, hence the errors pointed out must also vitiate the verdict to the extent of the penalty.

The judgment of this Court, therefore, is that the judgment of the Circuit Court be reversed and a new trial granted unless plaintiff, within thirty days from the filing of the remittitur herein, remit from the verdict and judgment al in excess of $275 and interest thereon from January 31, 1906.