### 8441; 8650

### DuPRE v. COLUMBIA, N. & L. R. CO.

### (79 S. E. 310.)

Carriers of Goods. Interstate Commerce. Powers Remaining to
State. Carmack Amendment.

The Carmack Amendment, June 29, 1906, c. 3591, sec. 7, 34 Stat. 593
(U. S. Comp. St. Supp. 1911, p. 1307), to the Interstate Commerce
Act, February 4, 1887, c. 104, sec. 20, 24 Stat. 386 (U. S. Comp. St.
1901, p. 3169), imposing a liability for damage to goods shipped
upon the initial carrier, and providing that it shall not deprive the
owner of any right which he had under the existing law, does not
deprive a consignee of his right to a penalty for failure of the termi-
nal carrier to pay the damages to the shipment or to inform the
consignee of which carrier caused the damage, given by act Feb-
ruary 15, 1910 (26 Stat. at Large, p. 717, Civ. Code 1912, sec. 2572),
since the two statutes refer to the liability of different carriers.

Before Gage, J., Columbia, Fall term, 1912. Affirmed.

Action by M. B. DuPre against the Columbia, Newberry
& Laurens Railroad Company. Judgment for plaintiff, and
defendant appeals.

*Messrs. Lyles & Lyles,* for appellant, cite: 91 S. C. 379, 381; 125 U. S. 181; 31 L. Ed. 650; 125 U. S. 465; 162 U. S. 197; 40 L. Ed. 490; 34 S. W. 145.

*Messrs. Rembert & Montieth,* for respondent.

March 10, 1913.

The opinion of the Court was delivered by Mr. Justice Hydrick.

This action was brought against the defendant, the terminal carrier of an interstate shipment, to recover the penalty provided by statute (26 Stat. 717, Civil Code 1912, sec. 2572) for failure to pay the damages to a shipment, or trace it, and inform the consignee when, where, and by which carrier it was damaged, within forty days after notice thereof. Defendant admits liability for the penalty if the statute imposing it is not in conflict with the federal statute regulating interstate commerce.

In *Meetze* v. *Sou. Express Co.,* 81 S. C. 379, 74 S. E. 823, it was held that, as to initial carriers of interstate commerce, the State statute was superseded by the federal statute, because the purpose of the State statute was to find out which carrier was liable, and the federal statute answers that question as to initial carriers by making them liable at all events. The same reasoning, however, does not apply when it is sought to enforce the State statute against intermediate or terminal carriers, because their liability to the owner of the goods is not affected by the federal statute. The proviso to the Carmack amendment reads: "That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." If, therefore, the owner finds it to his advantage to pursue the carrier who actually lost or damaged the goods, the same not being the initial carrier, it is as necessary now as it was at the time of the adoption of the Carmack amendment, that he have the information

which the statute requires the carriers to furnish, which they can usually and readily do. The federal statute does not cover the same field as the State statute, when applied to intermediate or terminal carriers; and, therefore, as to these there is no conflict.

It has been settled by repeated decisions of this Court and of the Supreme Court of the United States that statutes like this are within the power of the States, in the absence of federal legislation on the same subject. *Winslow* v. *Railroad Co.,* 79 S. C. 344, 60 S. E. 709, and cases cited; *Richmond & Co.* v. *Patterson Tobacco Co.,* 169 U. S. 311, 18 Sup. Ct. 335, 42 L. Ed. 759; *Atlantic C. L. R. Co.* v. *Mazursky,* 216 U. S. 122, 30 Sup Ct. 378, 54 L. Ed. 11.

Affirmed.


September 20, 1913.

A petition for rehearing was filed by appellant and dismissed on the following order, delivered by the Court through Mr. Justice Hydrick.

The petition for rehearing in this case is based upon the ground that, since the filing of the opinion herein, the Supreme Court of the United States has held, in the case of *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, filed January 6, 1913, that the proviso to the Carmack amendment, which saves to the holder of the bill of lading "any remedy or right of action which he has under existing law," must be construed as saving only remedies and rights which he had under existing federal law, and that therefore the proviso cannot be held to save to the holder of the bill of lading the right and remedy given him by the statute of this State, under which the defendant was penalized, for failing to furnish the consignee the information required by the statute. It is also contended that the statute is in conflict with the Carmack amendment, as the amendment was interpreted and applied by the Supreme Court in the Croninger case.

In the case of *Varnville Furniture Co.* v. *C. & W. C. R. Co.*, 98 S. C. 63, 79 S. E. 700, we attempted to show that the language of the Supreme Court in the Croninger case, properly construed, did not have the effect of limiting the proviso to the Carmack amendment to the saving of rights and remedies existing only under the federal law, but that the Court gave it the same construction which had been given a similar provision in the act of 1887 to regulate commerce in *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, to wit: "That it was evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the interstate commerce act, or by State statute or common law, *not inconsistent with the rules and regulations prescribed by the provisions of this act.* (Italics added.)

What we said in the Varnville case is applicable in this case, because that decision is rested upon the ground that there is no federal legislation upon the subject covered by the State statute, and for the same reason we hold that the statute assailed in this case is valid. This principle upon which we decided that case is so clearly and cogently stated in *Chicago, Rock Island & Pacific Ry. Co.* v. *Hardwick Farmers Elevator Co.*, 226 U. S. 426, 33 Sup. Ct. 174, 57 L. Ed. 284 (decided January 6, 1913), that we quote it as there stated. After having shown that Congress has legislated concerning the deliveries of cars in interstate commerce by carriers subject to the act by imposing a specific duty to furnish them for interstate traffic upon reasonable request therefor, and by giving remedies for the violation of that duty, the Court proceeded: "As legislation concerning the delivery of cars for the carriage of interstate traffic was clearly a matter of interstate commerce regulation, even if such subject was embraced within that class of powers concerning which the State had a right to exert its authority in

the absence of legislation by Congress, it must follow, in consequence of the action of Congress to which we have referred, that the power of the State over the subject matter ceased to exist from the moment that Congress exerted its paramount and all-embracing authority over the subject. We say this because the elementary and long settled doctrine is that there can be no divided authority over interstate commerce and that the regulations of Congress on that subject are supreme. It results, therefore, that in a case where, from the particular nature of certain subjects, the State may exert authority until Congress acts under the assumption that Congress by inaction has tacitly authorized it to do so, action by Congress destroys the possibility of such assumption, since such action, when exerted, covers the whole field and renders the State impotent to deal with a subject over which it had no inherent but only permissive power. *Southern R. Co.* v. *Reid,* 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257."

Clearly, therefore, until Congress takes possession of the field covered by this statute, its validity remains unimpaired, and there is no conflict either as to the exercise of the power over the subject or in the regulation affecting it. The vital question, then, is: Has Congress legislated upon the same subject? Certainly the Carmack amendment does not deal with it. In the Varnville case we showed that the subject of the Carmack amendment was "the liability of the carrier under a bill of lading which he must issue." We believe the legislation of Congress will be searched in vain to find any provision which even indirectly deals with the same subject which is covered by this statute (the requiring of intermediate and terminal carriers to inform the shipper when, where, and by which carrier in the route his goods were lost or damaged), if they can furnish that information by the exercise of reasonable diligence, a duty which in no wise affects the liability under the bill of lading. In *Sea-*

*board Air Line R. Co.* v. *Seegers,* 207 U. S. 73, 28 Sup
Ct. 28, 52 L. Ed. 108, and in *Atlantic Coast Line R. Co.* v.
*Riverside Mills,* 219 U. S. 200, 31 Sup. Ct. 164, 55 L. Ed.
180, 37 L. R. A. (N. S.) 7, and in other cases, the Supreme
Court has pointed out the fact and made it a ground of
decision that "the business association of such carriers
affords to each facilities' for locating primary responsibility
as between themselves which the shipper cannot have."

In *Missouri, K. & T. R. Co.* v. *Harriman,* 227 U. S. 657,
33 Sup. Ct. 397, 57 L. Ed. 690, decided March 10, 1913,
the Court held that a stipulation in a bill of lading limiting
to 90 days the time within which an action can be brought
against the carrier to enforce liability for loss or damage
en route is valid, and that it supersedes State laws to the con-
trary. The reason is therefore the greater why carriers
should furnish the shipper the information required by this
statute.

If the carrier is allowed to say to the shipper, "You must
bring your action for loss or damage within 90 days from
the happening thereof, and you can recover only against the
carrier on whose line the injury occurred, unless you sue
the primary carrier, under authority of the Carmack amend-
ment," certainly the shipper should have the right to say to
the carrier who delivers his goods to him in a damaged con-
dition, or fails to deliver them at all, "Then you must tell
me when, where, and by which carrier in the route the dam-
age was done, if you can get that information by the exer-
cise of reasonable diligence."

For the foregoing reasons, the petition is dismissed.
But, inasmuch as counsel for appellant have asked that the
remittitur be further stayed to give them time and oppor-
tunity to apply to the Supreme Court of the United States
for a writ of error, it is ordered that the remittitur be fur-
ther stayed for a period of thirty days from the filing of this
order.

Mr. Justice Watts *concurring.* I gave my views in reference to the matters involved in this petition in my dissenting opinion in the case of *Varnville Furniture Co.* v. *C. & W. C. R. Co.,* 98 S. C. 86, 79 S. E. 708, but a majority of the Court decided otherwise and I am bound by that decision, and for this, concur in dismissing the petition herein.

Mr. Justice Gage was not on the Court when this case was decided.

The case was carried on writ of error to the United States Supreme Court.