WALLINGFORD & RUSSELL v. COLUMBIA & GREENVILLE RAILROAD COMPANY.

1. A railroad company, as a common carrier, is bound to furnish safe cars for freight and to transport securely; and, therefore, it is liable for injury done to stock, while being carried on its own line, by a defective car in which the stock was received from a connecting line.
2. The defendant is not entitled to a non-suit upon the strength of a written contract introduced by him upon the cross-examination of one of plaintiff's witnesses.
3. A common carrier is bound to make safe delivery of all goods entrusted to its carriage, unless lost by the act of God or the public enemy, but be may exempt himself by special-contract, except for negligence. And the burden of proof is on the carrier to show a loss from an excepted cause.
4. The judge could not properly charge that if the jury thought the defendant and its connecting line were partners, the defendant was liable only by the terms of the contract under which the connecting line carried the stock—for it was a disputed question of fact, whether there was any special contract with these lines; and besides, such a charge would exempt the defendant from a liability for negligence.
5. A written freight contract between the shipper and the initial railroad company construed by its terms to be limited to the shipping road, and not to extend to other roads over which the freight was transported to the destination mentioned in such contract.
6. An agreement, to be binding, must be understood and assented to by both parties.

7. The acceptance (or assent to the use) of a defective box-car, by the shipper, does not relieve a railroad company from liability for damages caused by such car.

8. Horses shipped by railroad and not delivered—the measure of damages is their value at the point of destination.

Before WITHERSPOON, J., Abbeville, February, 1886.

This was an action by Samuel Wallingford and Lewis H. Russell, partners as Wallingford & Russell, against the defendant company, commenced in May, 1885. The action was for injury done to horses while on the road of defendant, and while being unloaded at a station, which horses had been shipped at Bloomington, in Indiana, and received at their destination, in Abbeville, S. C., without any other contract than the following:

Received by the Louisville, New Albany & Chicago Railway Company

The following described live stock to be transported in accordance with the terms and conditions of the contract entered into below:

| Consignee, Destination, &c. | Description of Stock. | Car Number. |
|---|---|---|
| S. Wallingford, Abbeville. Charges $35. | Horses. | |

Tariff rate per car on this shipment from Bloomington to Louisville is $35.00.

LIVE STOCK CONTRACT.

BLOOMINGTON STATION, Dec. 1st, 1884.

Agreement made between Louisville, New Albany & Chicago Railway Company and its connecting lines of the first part and Samuel Wallingford of the second part.

Witnesseth—That, whereas, the said Louisville, New Albany & Chicago Railway Company, and its connecting lines, as common carriers, transport live stock only as per tariff: Now, in consideration that the said party of the first part will transport for the said party of the second part one car load of horses, 17 head, more or less, from Bloomington to Louisville Station at the

rate of thirty-threee dollars per car load, and a free passage to the owner, or his agent, on the train with the stock (if shipped in car load quantities) the same being a special rate, lower than the regular rate mentioned in the said tariff, the said party of the second part thereby relieves said party of the first part from the liability of common carrier in the transportation of said stock, and agrees that such liability shall be only that of a private carrier for hire; and it is further distinctly understood by the parties hereto that all liability of said Louisville, New Albany & Chicago Railway Company as carriers, shall cease at Louisville, when ready to be delivered to the owner, consignee, or carrier, whose line may constitute a part of the route to destination.

And said party of the second part hereby accepts for such transportation the cars provided by said company, and used for shipment of said stock, and hereby assumes all risk of injury which the animals, or any of them, may receive in consequence of either, or any, of them being wild, unruly, or weak, or maiming each other or themselves, or in consequence of heat or suffocation, or other ill effects of being crowded in the cars, or on account of being injured by the burning of hay, straw, or other material used by the owner for feeding the stock or otherwise, and also all risk of damage or injury, or loss whatever which may be sustained by reason of any delay or detention in such transportation, whether occasioned by any mob, strike, or threatened violence to person or property from any source, or injury to track or yards, or any or all other causes, whether mentioned or not, and all risk of escape of any portion of said stock, or of loss or damage from any cause or thing, not resulting from the negligence of the agents of said party of the first part. * * *

And it is further agreed that said party of the second part will see that said stock is securely placed in the cars furnished, and that the cars are securely and properly fastened so as to prevent the escape of said stock therefrom. * * *

And it is further agreed that, should damage occur for which said party of the first part may be liable, the value at the place and the date of shipment shall govern the settlement, in which the amount claimed shall not exceed for a stallion or jack $200.00; for a horse or mule, $100.00; cattle, $30.00 each. * *

And, for the consideration before mentioned, said party of the second part further agrees that as as a condition precedent to his right to recover any damages for loss or injury to said stock, he will give notice in writing of his claim thereof to some officer of said party of the first part, or its nearest station agent, before said stock is removed from the place of destination above men-

tioned, or from the place of delivery of the same to said party of the second part, and before such stock is mingled with other stock.  The evidence that the said party of the second part, after a full understanding thereof, assents to all of the conditions of the foregoing contract is his signature hereto.

Upon the delivery of the horses at Abbeville plaintiff paid the following bill to the defendant:

DEPOT, Dec. 9, 1884.

Mr. Samuel Wallingford—
To Columbia & Greenville Railroad, Dr.

| Date. | Articles. | From. | No. of List. | Weight. | Total. |
|-------|-----------|-------|--------------|---------|--------|
| | For freight and charges on | | | | |
| | 1 Car Stock. | Louisville. | | 20,000. | $170.17. |
| | 20 horses and 1 mule. | " | | | |
| Feed 21 Head Stock at | | Nashville, | | | 12.50. |
| " 20 " " " | | Chatta., | | | 11.50. |
| " 20 " " " | | Atlanta, | | | 10.50. |
| | | | | | 204.67. |
| | 1 Pk. Express, | | | | 25. |
| | | | | | $204.92. |

Received Payment, Dec. 10, '84.

HAMMOND, Agent.

Other matters are stated in the opinion.

*Messrs. Benet & Smith,* for appellants.

*Messrs. Parker & McGowan,* contra.

March 11, 1887.  The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.  The plaintiffs, respondents, some time in 1884, shipped certain live stock on the Louisville, New Albany & Chicago Railway Company, under a special contract, from Bloomington to Louisville Station, the destination of the stock being Abbeville C. H., S. C.  From Louisville Station, the stock reached Seneca City, S. C., via Atlanta, Ga. From Seneca they were transported by the defendant company to Hodges in the same car in which they came from Atlanta, and

thence to Abbeville C. H.   The freight was paid at Abbeville to the agent of defendant company at that point.   The stock was found greatly injured at Hodges, alleged by the plaintiffs to have been caused by the defective box car in which they had been transported, and the negligence of the engineer, and at Hodges two of said horses fell between the cattle shoot and the car, because of negligence in building the shoot too far from the track, causing injury.   Upon full hearing the jury found for the plaintiffs $450.

The appeal raises no question as to the fact of injury, nor as to the amount of the damages, nor is it denied that said injury was occasioned in consequence of the defective car, in which the stock was transported.   These facts, it is agreed, were established by the verdict.   The defendant claims exemption, however, under a contract in writing between the L., N. A. & C. R. R. Co. and the plaintiffs, introduced in evidence on the cross-examination of plaintiffs' witness, and also upon the ground that defendant company should not be responsible for the defective car in which the horses were transported from Seneca to Abbeville, it being the same car in which they had come from Atlanta.   The defendant moved for a non-suit at the close of the plaintiffs' testimony, which was refused.   The appeal involves a question of error assigned to this refusal, and also to the refusal to charge certain propositions requested, and to certain propositions charged on the two matters above, to wit: the written contract and the defendant's responsibility for the defects in the Atlanta car.

The motion for non-suit was made upon two grounds: First, "Because the plaintiffs failed to adduce any evidence of negligence on the part of the defendant, inasmuch as the defendant had merely hauled the car received from the connecting railroad, the Airline—the defects which caused the alleged injuries being in said cars."   This assumed (which was no doubt true), that the car was dangerously defective when the defendant company received it at Seneca City, and that the injuries sustained resulted from said defect.

The responsibility of a common carrier is to transport, safely and securely, which includes as to railroad common carriers, the

necessity of having safe appliances, cars, machinery, &c., and we know of no principle of law which would allow them, when damage is done by a defective car, to shield themselves upon the ground that said car belonged to, and was used by, another company. When the car here was received by the defendant, it was adopted as a part of the defendant's train, and defendant then became as fully responsible for its character, &c., as if it was their own car. It would be a very dangerous doctrine indeed to say that because one railroad company had gone through with defective and dangerous cars, passenger coaches, &c., without damage, that, therefore, another company using said defective car with damage should escape liability, The case of *Felder* v. *C. & G. R. R. Co.* (21 *S. C.*, 35), relied on by appellant, has no application here, as we conceive. In that case the effort was to make the defendant liable as a joint contractor with a connecting line (evidenced by the sale of a through ticket), whereby it was sought to make the defendant responsible for the default of another. But here, the effort was to make the defendant responsible for injury done on its own road, resulting from its own negligence in transporting the stock in a dangerous car, and not for the negligence of another. We do not think that the fact that the car in question was an Atlanta car relieved the defendant, and, therefore, left the case without sufficient testimony to go to the jury.

"Second. Because the plaintiffs offered no evidence to show that they had complied with the terms and conditions of the contract entered into between them and the defendant, but that, on the contrary, plaintiffs' testimony proved they had not complied with said terms and conditions." One defence of the defendant was, that there was a written contract between the plaintiffs and defendant, containing certain stipulations, which had not been complied with by the plaintiffs. The fact of there being such a contract between the parties was denied by the plaintiffs, they contending that said contract was between themselves and the L., N. A. & C. R. R. Co., with reference to the transportation of the stock from Bloomington to Louisville Station, and no further. This was a question of fact, in part at least, and was a matter of defence.

It is claimed, however, that it was introduced by defendant

during the plaintiffs' testimony, in the cross-examination of one of their witnesses, or, at least, that it was in before the defendant was put to the defence.  A non-suit is proper when there is a total absence of evidence as to some one, or all, of the material allegations in the complaint, constituting the cause of action. Here, the plaintiff relied upon certain alleged facts as constituting their cause of action, and introduced testimony in support of these allegations.  The defendant claimed, as matter of defence, that plaintiffs' real cause of action, if any, was the contract which defendant interposed; and that having failed to show compliance with this contract, on their part, they should be non-suited. This seems to us to be stretching the doctrine of non-suit further than ever claimed before.  It amounts to this, that if, by some accident or skill in defendant's attorney, he can get in evidence during the plaintiff's testimony, in support of his defence, that then, unless plaintiff shall overthrow by affirmative proof said defence before he closes, that he shall be non-suited.

The objection to this proposition is, that there would be too many facts taken from the jury and left to the court.  Before the court could act, it would first have to find as matter of fact, that the defence had been established, because the plaintiff is not called upon to meet the defence until it is proved, at least *prima facie*.  In non-suits, the court is not authorized to weigh evidence, but to determine whether any evidence has been introduced.  Here then, even admitting that there was a contract, and that the defendant had proved it in the opinion of the court, yet the plaintiffs had the right to go to the jury on that question as a matter of fact, and the judge could not assume it, thus taking it away from the jury, and then non-suit the plaintiff, because there was a total absence of testimony to overthrow it, or in this instance, a total absence on the point whether plaintiffs had complied with the stipulations contained in the contract.

This brings us to the exceptions complaining of his honor's refusals to charge.  Before discussing these exceptions, it would be well to state some of the principles of law applicable to common carriers, about which there is little or no doubt.  At common law, there is no exemption to the liability of common carriers for goods, &c., entrusted to them, except for an act of God, or of the

king's enemies.  They are regarded as insurers as to all else. In England, however, and in several States of this Union, including our own (South Carolina), the common law doctrine was modified to the extent of allowing a common carrier to exempt himself from this broad liability, by special contract, as to certain specified causes of injury.  See in this State, *Swindler* v. *Hilliard & Brooks*, 2 *Rich.*, 286; *Baker* v. *Brinson*, 9 *Id.*, 202, and other cases, which need not be cited.  It was, however, held in all of the cases, that he could not shield himself from the consequences of negligence by a contract; that his character as common carrier could not be changed by contract, only his liability to the extent of the specified exemptions was diminished.  In all things else the general doctrine of common carriers applied, and especially as to negligence; and, further, that the *onus* was upon him to bring himself by the testimony within the exemptions mentioned in the contract.

Judge Evans, in the case of *Swindler* v. *Hilliard & Brooks*, *supra*, said: "It would seem from the recent cases of *Hollister* v. *Nowlen*, 19 *Wend.*, 234, and *Cole* v. *Goodwin & Story*, *Ibid.*, 251, that in New York a carrier is not allowed by a special contract to lessen the liabilities which the common law attaches to his employment.  But I think, notwithstanding what is said in those cases, the contrary opinion has prevailed in England for many years past, that it is the acknowledged law in most of the American States, and is recognized in this State in the case of *Patton* v. *McGrath & Brooks*, *Dud.*, 159.  * * There is no difference of opinion in the court, and I deem it unnecessary to say more on the subject."  It was held in that case, that common carriers could not by any special contract or agreement exempt themselves from liability for negligence, and that where a contract was made, the *onus* of showing, not only that the cause of the loss was within the terms of the exception, but also that there was no negligence, lies on the carrier.

After these cases and as late as 1872, by act of the legislature, even the right of exemption by special contract was abolished, which restored the common law doctrine in its full force; but in the act of 1882 the terms *special contract*, found in the act of 1872, were left out, thereby reinstating the law as announced in

said cases above. During the interval, the case of *Piedmont Man. Co.* v. *C. & G. R. R. Co.* (19 *S. C.*, 353), was heard by this court, in which the stringent common law doctrine was held to be the law of this State, with no right on the part of the common carrier to exempt himself, the act of 1872 expressly prohibiting it. Since the act of 1882, which is now of force, we conceive that the law announced in the cases *supra*, must control, as we have already said above.

In the case at bar, the defendant interposed two defences, as stated: First, that the stock of plaintiffs was transported under a special contract, which had not been complied with on the part of the plaintiffs. Second, that defendant should not be held liable for the defective car, under the circumstances. Exceptions 5, 6, 10, 11, and 13 assign error to the Circuit Judge in refusing to charge, and in charging certain propositions therein stated, as to the contract relied on by the defendant. We will take these up first, as they all belong to the first defence.

Exception 5. "Because his honor refused to charge, that if the jury was satisfied from the evidence that defendant company and the Air Line Railroad Company were partners in the transaction of transporting the stock, then the defendant company could be bound only by the terms of the contract under which the said car load of horses was transported over the Air Line Railroad." Exceptions, in a case at law, are intended to present some principle of law violated by the judge, either in refusing to charge or in charging. There is no principle or legal proposition distinctly stated here and claimed to have been violated. There is a state of facts mentioned which if the jury found to exist, the appellant claimed that the judge should have charged that appellant could only be bound to a certain extent, to wit, upon the terms of the contract. But upon what principle? We suppose upon the principle that the individual members of a copartnership transaction can only be held liable as the copartnership as a whole would be held, to wit, according to the contract made.

The judge in refusing the request did not violate this principle. First, because, even supposing that the jury might find these two companies partners, the request required the judge to assume that the Air Line Railroad had transported the stock of plaintiffs

under the special contract, which was a question of fact in part depending upon the evidence, and, being such a question, the judge had no right to assume it. And, second, because, admitting that both of these companies transported the stock under the contract, the action was against common carriers, founded upon alleged negligence, and that was the issue presented by the plaintiffs; and the contract, as we have seen, could in no event shield the defendant from negligence.

A common carrier is bound to deliver the property which he undertakes to transport at the point of discharge safe and uninjured, at the peril of liability, except where the injury has resulted from some cause excepted in a contract (other than negligence), which is a matter of defence, the *onus* of proving which is upon the defendant. The plaintiff has nothing to do but to show the injury, and the defendant becomes at once *prima facie* liable, and remains so until he shows that said injury resulted either from an act of God, the public enemies, or a cause from which he had exempted himself legally in a special contract. This being the law, the judge here could not have charged that the defendant was shielded by the contract, even supposing the transportation was made under it, because that would have assumed that the cause of the injury was an excepted one, and that the defendant had proved it, thus invading the province of the jury.

The 6th exception is similar to the 5th, except it went a step further and requested the judge to charge that if there was a special contract, then the defendant lost the character of a common carrier and became a private carrier for hire, and his liability depended entirely upon the terms of the contract. This is directly against *Baker* v. *Brinson, supra,* where it was said by the court, in terms, that a contract does not change the character of the common carrier, and that as to negligence and all else, but the exceptions, the common law applies—the contract only relieving him to the extent of the legally excepted causes of injury, which, we repeat here, he must show were legally excepted, and that the injury resulted from them.

10th. "Because the judge erred in charging that the contract was an agreement between the plaintiffs and the L., N. A. & C. R. R. Co., only between Bloomington and Louisville." Whether

the contract was entered into, was a question of fact. Its construction was for the court. We think the judge was correct in construing it as he did. His construction is sustained by the express language of the instrument.

11th. "Because his honor erred in charging that the contract in question was not binding unless it was proved that plaintiffs understood the terms thereof." We do not find in the charge any where that his honor used the precise language complained of. The judge said, in general terms, that an agreement to be binding must be assented to and understood by both parties. This is certainly good law, as appears from the very definition of a contract.

13th. "Because his honor erred in charging that a common carrier could not limit his liability as a common carrier at common law, even if he proved that he attempted to do so." Here, again, we have failed to find that his honor charged as specified. He did say that there could be no limitation "*for negligence*," and in this, as we have shown above, there was no error.

Now, as to the exceptions upon the other branch of the defence, to wit, 3, 4, 7, 8, 9, 14, and 15. The 3rd and 4th exceptions, as we understand them, contend that if the defective car was furnished to the defendant company by the Air Line Railroad Company, that defendant company could not be held liable unless it was proved to the satisfaction of the jury that said companies were partners. This position has been met above in substance, as we hold that the defendant can claim no exemption on the ground that the defective car came to them from the Air Line Road, whether they were partners or not. The defendant is sued here for its own alleged negligence. That the car was defective, was a matter for the jury under the evidence on the question of negligence, and it makes no difference where it came from. For the time being, it was the car of the defendant, which it was bound to see was suitable and safe.

7th. "Because his honor erred in refusing to charge that if plaintiffs accepted at Atlanta the car by the defects of which injuries were inflicted on the horses, then the plaintiffs contributed, by their negligence, to their injury, and cannot recover damages." As has been said above, a common carrier is an

insurer against all injury except such as results from the act of God or the public enemies, and, in this State, except such as may be caused by something which in law he can and has exempted himself from by a special contract.  The injury here did not result from any cause of the kind mentioned.  The contract relied on did not exempt the defendant from liability for a defective car, if accepted by the plaintiffs, even if the contract had been between the parties.  It is true that it contained a provision that the plaintiffs should accept the cars provided by the company, but the plaintiffs did not assume all risk arising from defective cars.  Nor did the fact of acceptance dispense with the legal necessity in the company to furnish safe and secure cars.  The judge, therefore, could not have properly charged the request.

8th exception.  "That his honor declined to charge upon request that plaintiffs should not simply show negligence only, but should also show that the injury complained of resulted from this negligent."  That is good law in a case where negligence is the gist of the action, with the *onus* of proving it affirmatively on the plaintiff, as in *Glenn* v. *Railroad Company*, 21 *S. C.*, 466.  But in a case against a common carrier, like the one at bar, where the defendant is liable unless he proves that the injury was occasioned by a cause, which, under the principles above, he is exempt from, it has no application.

The 9th exception has been disposed of above; also the 14th.

15th, and last.  "That his honor erred in instructing the jury as to the measure of the damages, to wit, the value of the horses killed at the place of destination or delivery, and the actual damages incurred on account of injuries to the others."  The horses reached the point of delivery.  The contract of the defendant, as common carriers, required it to deliver them at Abbeville, free from injury, except as stated; and upon failing to do so, it necessarily followed that they should respond in damages sufficient to make good their value, uninjured, at that point.  This seems to have been the charge of the judge, in substance.  He had already ruled that the contract did not apply, which we think was the correct construction from its terms.  Therefore he could not have charged that the stipulation therein, as to the value of the stock at the place and date of delivery, should govern.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.