## 9314

### PIERO v. SOUTHERN EXPRESS CO.

#### (88 S. E. 269.)

1. TRIAL—OBJECTION TO EVIDENCE.—In an action by a showman against an express company for damages by delay in carrying a piano, where, to a question to the showman, asking him to state his average earnings in towns of approximately the same size as the destination of the piano, and under the same conditions as there existed, defendant's attorney objected on the ground that it would be the witness' opinion as to the conditions, the objection that it would tend to prove the average earnings of the entire show with the piano, was not presented.

2. TRIAL—OBJECTION TO EVIDENCE.—In an action for delay in shipping a piano, the objection, "I object to that," to plaintiff's testimony was too general for consideration as stating no grounds.

3. CARRIERS—CARRIAGE OF GOODS—DELAY IN SHIPMENT—EVIDENCE.— In an action against an express company for delay in transporting a piano for a showman, plaintiff's testimony as to the difference in his earnings at C., to which the piano was shipped, without it, and the average earnings in towns of approximately the same size and under the same conditions as C., was admissible to show actual damages.

4. EVIDENCE—EVIDENCE RESPONSIVE TO PLEADINGS.—In an action against an express company for delay in shipping a piano, testimony, given in response to the allegations of the complaint, was not irrelevant.

5. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.—In an action against an express company for delay in shipping a piano, error in the admission of testimony, which other testimony showed was not prejudicial to appellant's rights, was not ground for reversal.

6. EVIDENCE—HEARSAY.—In an action by a showman for delay in the shipment of his piano, testimony as to declarations, made by girls who sang in the show, as to whether there was any exhibition on certain nights, was inadmissible as hearsay.

7. DAMAGES—PUNITIVE DAMAGES.—Where an express company, shipping a piano, delayed it in such a manner that a person of ordinary reason and prudence would have said it was a reckless disregard of the shipper's rights, the company was liable for punitive damages.

8. CARRIERS OF GOODS—INSURERS.—A carrier of goods is an insurer in the sense that it is absolutely liable for nonperformance of its contract to carry and safely deliver the goods with reasonable promptness, except where performance is prevented by the act of God or the public enemy.

9. CARRIERS—CARRIAGE OF GOODS—LIABILITY FOR DELAY—INSTRUCTIONS. —In an action against an express company for delay in transporting a shipment, where the Court charged that a common carrier, accepting freight for transportation, insures safe delivery, and is bound to carry it according to contract, unless prevented by the act of God, or the public enemy, and on defendant's counsel suggesting that the express company did not undertake to insure against delay, charged that the carrier was bound to carry out its contract, such charge was proper, as simply meaning that the express company was liable for an unreasonable delay.

FOOTNOTE.—Damages from unreasonable delay in transportation of goods by a carrier are elements of loss, damage or injury to such goods, see *N. Y. P. & N. R. Co.* v. *Peninsula Produce Exchange,* — U. S. —, 36 Sup. Ct. 230. As to excuses for delay by carrier in transportation of goods, see note in 9. L. R. A. 836.

Before MAULDIN, J., Sumter, July, 1915.   Affirmed.

Action by H. V. Piero against the Southern Express Company.   From a judgment for plaintiff, defendant appeals.

The complaint was as follows:

That at the times hereinafter mentioned, and for some time prior thereto, the plaintiff was engaged in the show business, and that to carry on his show business, it was absolutely necessary to have a piano for the purpose of having music.   That he would go from small town to small town, usually for a week's engagement at each place. That he had an engagement at Cameron, S. C., commencing Monday, December 30, 1913.   That at other points he had been able to rent a piano.   That it was cheaper and less troublesome to rent a piano at the different points, if possible to do so, than to own and ship one from place to place. That when he reached Cameron, S. C., he tried to rent a piano, but found that it was impossible to do so, and, it being practically impossible to carry on his show successfully without a piano, he immediately came to Sumter on Monday, December 30th, and bought one to take to Cameron at once to be used in said show.

That he came to Sumter on Monday, December 30, 1913, bought a piano, and took the same to the depot and delivered it to the agent of the Southern Express Company, to be taken by express to Cameron, S. C.   That said agent delivered to him a receipt for said piano, and that at the time delivery of the said piano to the agent of the defendant at Sumter, S. C., the plaintiff notified him of the necessity to have said piano carried to Cameron by the first express.   He notified said agent that his show was then at Cameron, S. C.; that he had been unable to rent a piano there, and that he had been forced to come to Sumter and buy this piano; that his show was there, and he was unable to carry out his engagement until he could get said piano there; that his loss would

be considerable each day until he could get said piano; that he would lose at least $200 or more per day until he got said piano; that he wanted it to go out by the first express; that he fully informed the agent of the defendant of the business in which he was engaged, the necessity to have said piano, the loss he would sustain without same, and in general notified him of all of the circumstances connected therewith, whereupon the agent promised the plaintiff that said piano would be shipped by the express which would leave Sumter, S. C., for Cameron, early Tuesday morning, and would reach Cameron in the early part of the morning. That while at said depot the plaintiff saw the agents of the defendant roll said piano to the car door, preparatory to loading the same.

That when said express car reached Cameron on Tuesday morning, the plaintiff went to meet it for the purpose of getting said piano to take to his show, but found out that the piano had not arrived, whereupon he inquired of the agent the cause, and he was informed that the piano had been left at Sumter. That when they went to load the same, they found it too heavy for the few men they had present to load it with. The plaintiff again notified this agent of what he had notified the agent at Sumter, of the importance of having this piano, and of the loss he would sustain from day to day until he did get it. That he did everything he could to get the defendant to have said piano brought on to Cameron. That he saw the defendant's agent from time to time at Cameron, notified him of the importance of having said piano, notified him of the loss he would sustain, but notwithstanding all of this, the defendant kept said piano at Sumter until Friday, January 3, 1914, and did not bring it to Cameron until Friday night, January 3, 1914, which actually prevented plaintiff from running his show in the usual manner, at a loss of $200 or more per day.

That between the time the plaintiff delivered said piano to the defendant at Sumter and the time they delivered it

to him at Cameron, S. C., considerable rain had fallen and the weather was damp and bad; that the defendant had left said piano out in the open air at Sumter, not under a shed, had allowed the rain to fall upon same, and when it was delivered at Cameron, it was very wet and in a very bad and damaged condition, all of which was caused on account of the negligent, wilful, and wanton acts of the defendant and in utter disregard and violation of the plaintiff's rights.

That notwithstanding all of the facts herein alleged in connection with the expressing of said piano and the necessity of having the same promptly delivered to the plaintiff at Cameron, S. C., the defendant in utter disregard of plaintiff's rights, and in wilful and wanton violation of the same, held said piano out in the rain at Sumter until Friday, January 3, 1914, all to the damage of the plaintiff in the sum of $2,999.

Wherefore, the plaintiff demands judgment against the defendant for the sum of $2,999, and for the costs of this action.

At the close of the charge the Court inquired:

"Is there anything further?

Mr. Jennings: I would like to suggest that you charge the jury when a common carrier accepts freight to be transported, it insures the safe delivery, and is bound to carry it according to contract, unless prevented by the act of God or the public enemy.

Court: Yes, sir; that is a correct principle of law. A common carrier which is in the business of carrying people or commodities and goods for hire, where the common carrier accepts the goods in the course of its business, it does become an insurer for the safe delivery of the goods, barring the act of God or the public enemy. The act of God is something no man or corporation can control, and the law says the public enemy is a shield, and if loss occurs through

the act of the public enemy, that is the same shield as the act of God would be.

Mr. Reynolds: Yes, sir; on that point, he says it is an insurer for the safe delivery of the goods, but I ask your Honor to charge that it does not undertake to insure against delay in delivery.

Court: It does not for *necessary* delay—but *unnecessary delay, that is a question of fact for the jury.*

Mr. Jennings: They are bound to carry out their contract.

Court: Yes, sir; you are to determine that by the facts in this case."

The ninth, tenth and eleventh exceptions were as follows:

9. Because his Honor erred in refusing to charge the jury toward the close of his charge at the request of the defendant:

"That the defendant does not undertake to insure against delay and in delivery."

And in charging the jury in the following language:

"It does not for necessary delay—but unnecessary delay, that is a question of fact for the jury."

Whereas, he should have charged the said request in the language of the request and not have submitted the question of liability of a common carrier for delay as a question of fact for the jury. It is respectfully submitted that it was a question of law on which the Court should have instructed the jury carefully, and it was prejudicial to this defendant for the Court to have submitted the determination of this question to the jury, having instructed them with emphasis above that the defendant was an insurer against the loss of goods, whereas in this case there was only delay in the carriage.

10. Because it is respectfully submitted his Honor erred in making the defendant an insurer against all delay except necessary delay. Whereas, the defendant is not an insurer

against any delay at all, but is only liable for unusual delay due to negligence.

11. Because it is respectfully submitted his Honor erred in the latter part of his charge in laying special stress upon the contract and in charging plaintiff's request as follows:

."When a common carrier accepts freight to be transported, it insures the safe delivery, and is bound to carry it according to contract, unless prevented by the act of God or the public enemy."

Court: "Yes, sir; that is a correct principle of law."

And further, when plaintiff's counsel requested emphatically:

"They are bound to carry out their contract." Court: "Yes, sir; you are to determine that by the facts in this case. The evidence in the case is what you heard detailed from the witness stand, and such documentary evidence as adduced. You have the right to call for evidence that has been introduced in the form of paper evidence that you might want."

Whereas, the rule applicable to the case is that the carrier is bound to use reasonable diligence to deliver within a reasonable time. That it could not undertake a more burdensome duty than that imposed upon it by law without an extra consideration, and that it could not charge the extra consideration if there was no provision therefor in the tariff.

*Messrs. Mark Reynolds* and *Benj. D. Hodges,* for appellant, cite: *As to special damages:* 79 S. C. 15; 25 S. C. 71. *Speculative damages:* 81 S. C. 183; 40 S. C. 524; 76 S. C. 338; 79 S. C. 157; 81 S. C. 536; 83 S. C. 503; 74 S. C. 295; 71 S. C. 82; 85 S. C. 22; 71 S. C. 211. *It is a well established exception to the rule excluding hearsay that statements made by persons which accompany and elucidate or explain some act which is itself relevant to the issue involved and, admissible in evidence thereupon, are admissible in*

*evidence as part of the res gestæ:* 3 McCord (S. C.) 261; 4 Bingham New Cases 548; 63 Mass. (9 Cush.) 36; 9 N. H. 271; 1 Ohio St. Rep. 26; 23 Barbour (N. Y. Sup. Ct.) 639; 149 N. Y. 154; 28 Grattan (Virginia) 891; 20 Ala. 528; Stephens Digest of the Law of Evidence, Chase's edition, article VII; 16 Cyc. 1242; Prof. James B. Thayer in vol. XV; American Law Review, p. 107. *Apparently one branch of the so-called res gestæ exception to the rule excluding hearsay, namely, the branch which admits testimony as to declarations made substantially at the time of the main transaction under inquiry and so closely under the stress and excitement of its circumstances as to preclude the probability of fabrication, is well established and defined in this jurisdiction:* 76 S. C. 91; 68 S. C. 304. *Punitive damages:* 76 S. C. 200; 60 S. C. 74; 83 S. C. 498. *It is submitted that the law is clear that a common carrier is never an insurer against delay in delivery and its sole duty in the case of an ordinary shipment of goods is to use every reasonable effort to convey them to their destination with reasonable dispatch, in the absence of a special contract fixing an exact date, as the reason for making a carrier an insurer of safe delivery does not extend to delay:* 7 Rich. Law (S. C.) 190; 46 N. C. 211; 3 Texas Civil Appeals 20; 6 Heiskell (Tenn.) 271; 6 Cyc. 442.

*Messrs. L. D. Jennings* and *R. D. Epps,* for respondent.

March 7, 1916.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for damages, alleged to have been sustained by the plaintiff through the wrongful acts of the defendant, resulting in injury to a piano, and delay in its shipment from Sumter, S. C., to Cameron, S. C. The facts out of which the controversy arose are alleged in the complaint, which will be reported. The answer of the defend-

ant was a general denial. The jury rendered a verdict in favor of the plaintiff for $200, actual damages, and $500 punitive damages; and the defendant appealed.

The first and second exceptions are as follows:

"Because it is respectfully submitted his Honor erred in allowing the plaintiff, Piero, to testify, over objection of the defendant, as to what his average earnings from his show were, in other towns, approximately the same size as Cameron, when he had a piano in his show, as a basis for the jury to award him special damages. Whereas, his Honor should have ruled out the testimony as highly speculative, in that it was dependent upon a great many conditions on which the witness necessarily gave only his opinion, which opinion was incompetent.

"(2) Because his Honor erred in allowing the plaintiff, Piero, to give his opinion as to conditions prevailing in other towns, and also the amount of the gross receipts for his show in Eutawville, a town which he did not believe was any larger than Cameron, as a basis on which the jury should award him special damages in this case. Whereas, his Honor should have ruled out the same on the ground that it was speculative and remote, and the opinion of the plaintiff, which was incompetent."

The record shows that the questions presented by these exceptions arose as follows:

"By Mr. Jennings: Q. I will ask this question: I want you to state to the Court and jury your average earnings. I don't mean any special day or week, but I mean your average earnings in towns of approximately the same size as Cameron, and under the same conditions as existed in Cameron, when you had the piano.

"Mr. Reynolds: That would be his opinion as to the condition, and I object on that ground.

"Court: He can state the conditions. A. The week before I showed in Cameron was practically the same kind of week—in Eutawville, in a town I don't believe any larger

than Cameron is, my gross receipts of the show was something over $1,000. Q. In one week? A. Yes, sir. Q. What were the gross receipts at Cameron? A. I don't know. They were not very much.

"Mr. Reynolds: I object to that."

The appellant's attorney in his argument says:

"It was clearly error for his Honor, in a case like this, to give this shrewd showman the reign to his imagination as to what his entire show would make, or could have made, at other times and other occasions in the past.'"

It will be observed, however, that the ground of objection to the testimony was not that it would tend to prove the average earnings of the entire show, but simply on the ground that the testimony "would be the opinion of the witness as to the condition."

The second objection stated no ground whatever, and is therefore too general for consideration.

No good reason can be assigned why the difference in the earnings of the show, at Cameron, without the piano, and the average earnings in towns approximately the same size, and under the same conditions as existed in Cameron, would not tend to show the actual damages, caused by the delay in the shipment of the piano.

The third exception is as follows:

"Because his Honor erred in allowing the plaintiff's witness, W. L. Harris, to testify over the objection of defendant, as to the damaged condition and appearance of the piano when it was taken from the possession of Piero by the seller, a year or more after the delivery of the instrument at Cameron by the express company. Whereas, he should have ruled out the same as irrelevant, the piano having been hauled around from small town to small town, over railroads and on wagons, and exposed to rains and many changes in temperature."

There are two reasons why this exception cannot be sustained. In the first place, the testimony was in response to the allegations of the complaint; and, in the second place, even if there was error, the other testimony shows that it was not prejudicial to the rights of the appellant.

The fourth exception is as follows:

"Because his Honor erred in ruling out the testimony of David Bonaparte, a witness for the defendant, as to the declarations made by the girls who sang in the show, touching the reason why they returned to his boarding house, and as to whether there was any exhibition on Thursday night and the night previous. Whereas, the testimony was competent and relevant to demonstrate, by the declaration of the actors at the time of the transaction, that there were no exhibitions on the nights in question, and the reason therefor."

This exception cannot be sustained, as the testimony was clearly hearsay.

The fifth exception is as follows:

"Because his Honor erred in refusing to charge defendant's first request to charge, which was as follows: 'There is no evidence in this case of any wantonness or wilfulness on the part of the defendant's agents, and I direct that you cannot find any verdict, in this case, for punitive or exemplary damages.' Whereas, he should have charged the same, as the acts of the defendant showed a desire to mitigate any injury that might have been caused by any default, and indicated a state of mind other than reckless or wanton."

This exception is overruled, for the reason that there was testimony tending to prove the allegations of the complaint, as to a disregard of the plaintiff's rights.

"Not only is the conscious invasion of the rights of another, in a wanton, wilful, and reckless manner, an act of wrong, but that the same result follows, when the wrongdoer does not actually realize that he is invading the rights

of another; provided, the act is committed in such a manner that a person of ordinary reason and prudence would say, that it was a reckless disregard of another's rights." *Tolleson* v. *Railway*, 88 S. C. 7, 70 S. E. 311.

The sixth, seventh, and eighth exceptions were abandoned.

The ninth, tenth, and eleventh exceptions will be considered together, as they involve the same question.

8, 9    After his Honor, the presiding Judge, had charged the jury, the record shows that the following took place:

"Court: Is there anything further?

"Mr. Jennings: I would like to suggest that you charge the jury: When a common carrier accepts freight to be transported, it insures the safe delivery, and is bound to carry it according to contract, unless prevented by the act of God, or the public enemy.

"Court: Yes, sir; that is a correct principle of law. * * *

"Mr. Reynolds: Yes, sir;. on that point, he says it is an insurer for the safe delivery of the goods, but I ask your Honor to charge that it does not undertake to insure against delay in delivery.

"Mr. Jennings: They are bound to carry out their contract.

"Court: Yes, sir."

These exceptions assign error in said ruling. It will be observed that the appellant's attorney *did not* contend that the defendant was not *liable for an unreasonable* delay, but that it was only liable, as *an insurer,* for the safe delivery of the goods. It seems that he has given undue significance to the word "insurer."

"The general rule as to the common carrier's liability, with reference to the goods in his possession as carrier, and regardless of any contractual exceptions, is that he is liable for all loss or destruction of, or injury to, such goods, not occasioned by the act of God or the public enemy. There-

fore, where the loss is not due to the excepted cases, proof of negligence is immaterial, and the carrier cannot escape liability by proving reasonable care and diligence. In the English cases by which the rule of exceptional liability was first established, it was said that the carrier was an insurer of the goods, as against all loss or injury, not resulting from the excepted cases, and in some of the cases in the United States, the term 'insurer' is used; *but nothing more is meant by this expression than that the carrier is absolutely liable, with only the exceptions recognized in the rule as above stated."* (Italics added.)    6 Cyc. 376.

"The rule is unquestioned that it is as much a part of a common carrier's duty to carry and deliver with reasonable promptness as it is to receive and carry."    5 Enc. of Law. 244.

"At common law it has been long settled that a common carrier is responsible for the safe transportation and delivery of goods, received by him for carriage, and can justify or excuse a default only when occasioned by the act of God or the public enemy. * * *. From this severe responsibility to which by the common law he is subjected, he cannot relieve himself by proof of the highest possible care on his part. Nor will his entire faultlessness excuse him, but whenever a loss from any cause other than the act of God or the public enemy, the law may be said to raise against the carrier an absolute and conclusive presumption of negligence." 4 Ruling Case Law 696-698.

The word "insurer" is used in our decisions, in the sense hereinbefore stated. The rule is thus announced in *Ewart* v. *Street,* 18 S. C. L. (2 Bailey) 157, 23 Am. Dec. 131:

"It is, perhaps, not practicable to define accurately, the sort of accident that comes under the denomination of the act of God; nor is it necessary to do so. *Certainly it is not enough that there has been no negligence on the part of the carrier, and that he has used all the precautions which ordinary prudence would suggest."* (Italics added.)

The Court then proceeds to quote with approval, the following language of Lord Mansfield, in the case of *Forward* v. *Pittard,* 1 T. R. 33:

"To prevent litigation, collusion, and the necessity of going into circumstances impossible to be unraveled, the law presumes against the carrier, unless he shows it was done by the king's enemies, or by such an accident, as could not happen by the intervention of man, as storms, lightning, and tempests."

The carrier is rendered thus liable on motives of public policy.    The Court uses the following language in *Wallingford* v. *Russell,* 26 S. C. 258, 2 S. E. 19:

"At common law, there is no exemption to the liability of common carriers for goods, etc., intrusted to them, except for an act of God, or of the king's enemies.    They are regarded as insurers as to all else.    In England, however, and in several States in this Union, including our own (South Carolina), the common law doctrine was modified to the extent of allowing a common carrier to exempt himself from this broad liability by a special contract as to certain specified causes of injury. * * * It was, however, held in all of the cases that he could not shield himself from the consequences of negligence by a contract; that his character as common carrier could not be changed by contract, only his liability to the extent of the specified exemptions was diminished.    In all things else the general doctrine of common carriers applied, and especially as to negligence; and, further, that the onus was upon him to bring himself by the testimony within the exemptions mentioned in the contract."

In that case the Court also said:

"A common carrier is bound to deliver the property which he undertakes to transport at the point of discharge safe and uninjured, at the peril of liability, except where the injury has resulted from some cause excepted in a contract (other than negligence), which is a matter of defense,

the onus of proving which is upon the defendant. The plaintiff has nothing to do but to show the injury, and the defendant becomes at once *prima facie* liable, and remains so until he shows that said injury resulted either from an act of God, the public enemies, or a cause from which he had exempted himself legally in a special contract."

The foregoing language was quoted with approval in *Johnstone* v. *Railroad,* 39 S. C. 55, 17 S. E. 512.

The ruling of his Honor, the presiding Judge, simply meant that the defendant was liable for an unreasonable delay, and is in accord with the general principle prevailing elsewhere, and with the decisions in this State.

Some of the assignments of error in the last exception (No. 12) were abandoned, and the others were not argued.

Judgment affirmed.