## 13392

SWEENEY v. SOUTHERN RY. CO.

(163 S. E., 838)

*Messrs. F. G. Tompkins* and *F. B. Gary, Jr.,* for appellant,

*Mr. C. S. Monteith, Jr.,* for respondent,

April 25, 1932.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

This appeal is from a judgment of the County Court of Richland County in favor of the respondent for the sum of $150.00, in an action brought for the value of a mule, shipped in interstate commerce under a uniform live stock contract, which contained the following provision: "Section 1. (a) Except in the case of its negligence proximately contributing thereto no carrier or party in possession of all or any of the live stock herein described shall be liable for any loss thereof or damages thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, *the inherent vice, weakness, or natural propensity of the animal*, of the act of default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor, or threatened violence." (Italics added.)

In the trial, the respondent offered proof to show the apparent good condition of the mule when shipped, its value, and that it was found dead on arrival of the shipment at the destination. In the evidence presented by him, the respondent also brought out that the mule in question was one of a carload shipment of twenty-three mules, delivered to the common carrier at East St. Louis, Ill., on June 29, 1929, and that all of the other mules in the shipment were in good condition when the car was unloaded. On the evidence referred to respondent rested his case, relying, evidently, upon the theory of liability peculiar to common carrier cases declared in *Wallingford v. Columbia & G. R. Co.*, 26 S. C., 258, 2 S. E., 19, followed in *Johnstone v. Railroad Co.*, 39 S. C., 55, 17 S. E., 512, and *Piero v. Southern Express Co.*, 103 S. C., 467, 88 S. E., 269, 272. In the latter case, that theory, quoting from the *Wallingford case*, was announced in the following language: "A common carrier is bound to deliver the property which he undertakes to transport at the point of discharge safe and uninjured, at the peril of liability, except where the injury has resulted from some cause

excepted in a contract (other than negligence), which is a matter of defense, the onus of proving which is upon the defendant. The plaintiff has nothing to do but to show the injury, and the defendant becomes at once *prima facie* liable, and remains so until he shows that said injury resulted either from an act of God, the public enemies, or a cause from which he had exempted himself legally in a special contract."

The appellant; through the testimony of two veterinarians, sought to bring the case within the exception of the special contract governing the shipment, by showing that the cause of the mule's death was gastroenteritis (an inflammation of the stomach and intestines), and that this disease was caused by normal bacteria, which is always present in an animal's body (as an inherent vice, weakness, or natural propensity of the animal), becoming infectious when the animal has become debilitated, or when its vitality is lowered by the ordinary rigors of transportation over long distances.

One of the veterinarians, on direct examination, stated that in the ordinary course of transportation the keeping of an animal or animals from food and water for a period of thirty-six hours (within the thirty-six hour release provision of the uniform live stock contract) would tend to lower the vitality of the animal; but that the amount of food or water given the animal while in transit would not have anything to do with causing the condition. On his cross-examination, question was asked the veterinary whether the condition of gastroenteritis might not have been due to the mule being permitted to drink cold water while in transit in an overheated condition. The witness replied: "It is apt to; I would not say positively." A paid feed bill, showing that the stock were fed in Atlanta, Ga., was offered in evidence.

It does not appear to us that any facts except those stated, pertinent to the issues to be determined here, appeared in the trial of the case.

By a motion for a directed verdict in its favor, the appellant made the question of the sufficiency of the evidence

to carry the issue of the appellant's liability to the jury. The grounds of the motion were that there was no evidence of negligence on the part of the appellant, and that the carrier, by conclusive evidence, had brought the cause of the death of the mule within the exceptions fixed in the bill of lading.

The trial Judge refused the motion for a directed verdict, and later he declined to grant appellant's motion for a new trial.

In the appeal here presented, a number of exceptions are made, but the main question involved is whether the burden of proving negligence, proximately contributing to the death of the mule, was upon the respondent, in the face of the appellant's showing that the death resulted from a cause excepted in the contract.

The testimony of the veterinarians that the death of the mule resulted from gastroenteritis, which disease is due primarily to an inherent vice or weakness of the animal, is unquestioned. The carrier, therefore, brought itself within the general principle declared in the *Wallingford case* and the other cases following that decision, and thus it has met the burden of proving its defense that the injury resulted from a cause excepted in the transportation contract. The case made out by the appellant, therefore, was complete, and it was entitled to a directed verdict in its favor, *"except in the case of its negligence proximately contributing" to the loss of the mule.* The proviso in the shipment contract did not in express terms, or even by necessary implication, place on the appellant the burden of disproving negligence as an efficient co-operating cause, with an inherent vice, weakness, or natural propensity of the animal.

Since the present case arises out of an interstate shipment, we are required to follow the federal decisions. See *Adams Express Co. v. Croninger,* 226 U. S., 491, 33 S. Ct., 148, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257; *Herron v. Southern Pacific Co.,* 283 U. S., 91, 51 S. Ct., 383, 75 L. Ed., 857; and *Chicago, etc., Railway Co.*

*v. C. C. Whitnack Produce Co.*, 258 U. S., 369, 42 S. Ct., 328, 329, 66 L. Ed., 665. For the Federal Supreme Court, Mr. Justice McReynolds in the case last cited said: "It is established doctrine that the rights and liabilities in respect of damage to goods moving in interstate commerce under through bills of lading depend upon acts of Congress, agreements between the parties and common-law principles accepted and enforced in the Federal Courts."

The principles governing this case appear, it seems to us, well expressed in the case of *Hussey v. The Saragossa*, 3 Woods, 380, 12 Fed. Cas., 1066, No. 6949, where, under very similar facts, it was said: "The rule of law is, that when the carrier fails to deliver goods, or when he delivers goods in a damaged condition, the onus is cast upon him to show that he is not in fault. In other words, loss or injury is sufficient proof of negligence or misconduct, or of the intervention of human agency, and when shown, the burden is on the carrier to exempt himself. Ang. Carr. § 202; Story, Bailm. § 329; Code Ga. § 2066. But the shipper must show an injury to the article shipped before the burden is cast upon the carrier to exonerate himself. Is an injury shown when the article shipped is a horse or other live stock, which is proved to have been delivered to the carrier in good health and condition, and to have been re-delivered to the shipper in a sick and debilitated condition, but without any fractures, wounds, abrasions, or other external or visible injury? I think not. As well might a passenger who embarks in good health claim to support an action for damages against the common carrier, by simply showing that when he disembarked at the end of his voyage he was in a sick and debilitated condition.

"The liability of a common carrier of animals is not in all respects the same as that of a carrier of inanimate property. *For instance, he is not an insurer against injuries arising from the nature and propensities of the animals and which diligent care could not prevent. He is not liable for*

*injuries by disease contracted without his fault* after the stock is delivered to him. On the same principle, proof of the decay of perishable fruit committed to a common carrier, would not of itself be sufficient to charge him. [Citing cases.] When the damage to the thing shipped is apparently the result of its inherent nature or inherent defects, the shipper must show something more than its damaged condition before the carrier can be called on to explain. He must show some injury to the thing shipped which can not be the result of its inherent nature or defects, before the burden is cast upon the carrier to show that he is not in fault. \* \* \* " (Italics ours.)

Like principles are declared in the case of *Memphis & Charleston Railroad Co. v. Reeves,* 10 Wall., 176, 19 L. Ed., 909, where it was held the trial Judge erred in not charging the jury a request of the carrier in the following language: "When the damage is shown to have resulted from the immediate act of God, such as a sudden and extraordinary flood, the carrier would be exempt from liability, *unless the plaintiff shall prove that the defendant was guilty of some negligence in not providing for the safety of the goods. That he could do so must be proven by the plaintiff, or must appear in the facts of the case.*" (Italics added.)

Commenting on the error of the lower Court, Mr. Justice Miller, for the Supreme Court of the United States, had this to say: "No question of his [the carrier's] negligence arises unless it is made by the other party. It is not necessary for him to prove that the cause was such as releases him, and then to prove affirmatively that he did not contribute to it. If, after he has excused himself by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it."

In the article on "Carriers" in Ruling Case Law, the recognized principles are thus stated: "Where the injury is physical a shipper will satisfy the rule requiring him to

show an injury to his stock before the burden is cast on the carrier to exonerate itself, by establishing that the stock were delivered in good health and condition and re-delivered by the carrier in an injured condition, but *where the injury claimed is sickness a shipper does not satisfy the rule unless he goes further and shows that the illness was contracted as a result of the negligence of the carrier."* (Italics ours.) 4 R. C. L., 993.

See, also, *Adams Express Co. v. Allendale Farm,* 116 Va., 1, 81 S. E., 42, Ann. Cas., 1916-D, 894, and *Schaeffer v. Philadelphia, etc., Railroad Co.,* 168 Pa., 209, 31 A., 1088, 47 Am. St. Rep., 884.

In view of the decision we have reached that a directed verdict in favor of the appellant should have been granted because of the insufficiency of evidence to carry the case to the jury under the issue of the appellant's liability, it is not necessary to consider the other exceptions appearing in the record.

The judgment of this Court is that the judgment below be, and the same is hereby, reversed, and the case remanded to the County Court of Richland County for the purpose of having a directed verdict entered in favor of the appellant, as provided in Rule 27 of this Court.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.