8260

BENNETT v. COLUMBIA ELECTRIC STREET RAILWAY, LIGHT AND POWER CO.

1. CHARGE—APPEAL—PUNITIVE DAMAGES.—Where an appellant desires more specific instructions than are contained in the charge on any view of the law, he should present requests covering his views. Here a definition of punitive damages as an amount in addition to actual damages given by way of punishment to the wrongdoer, in absence of request, sustained.

2. STREET RAILWAYS—PUNITIVE DAMAGES.—Where a street railway car is run ten miles faster than its schedule time across a street without stopping as required by rule and without giving a signal, without an electric brake, the motorman seeing an infant on the track one hundred feet ahead but running over and past it fifty feet, when he saw and recognized a pedestrian on a crossing beyond, will support a verdict for punitive damages for injuring the child.

Before WILSON, J., Richland, November term, 1911. Affirmed.

Action by Thomas Bennett, Guardian of H. P. Bennett, against Columbia Electric Street Railway, Light and Power Co. Defendant appeals.

*Messrs. Elliott & Herbert,* for appellant, cite: *If proof of wilfulness be doubtful, the proof will be held to establish negligence:* 79 S. C. 211; 82 S. C. 93; 84 S. C. 484. *What is evidence of wilfulness:* 6 Rich. 52; 3 Black. Com. 367; 16 Cyc. 847; 54 S. C. 500; 34 S. C. 324; 82 S. C. 92; 60

S. C. 74; 83 S. C. 87; 79 S. C. 211; 84 S. C. 484, 15; 91 S. C. 305.

*Mr. W. Hampton Cobb,* contra, cites: *Evidence shows motorman was reckless:* 88 S. C. 7; 90 S. C. 308; 61 S. C. 556; 89 S. C. 97, 161; 90 S. C. 271; 90 S. C. 25. *Instruction as to punitive damages was sufficient:* 87 S. C. 532; 83 S. C. 251, 26; 85 S. C. 64; 86 S. C. 64; 90 S. C. 323; 64 S. C. 311.

July 18, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, when he was about a year and a half old, through the negligence and recklessness of the defendant.

The allegations of the complaint, material to the questions involved, are as follows:

"That on or about August 7, 1910, the defendant, while running one of its cars on its tracks, through the Olympia Mill village, on Olympia avenue, at or near its intersection with Ninth street, which is also one of the public highways of said Olympia Mill village, on a level grade, at a rapid and dangerous rate of speed, and in violation of the rules of said defendant, requiring all cars to be stopped when they cross the Bluff road, a public highway about four hundred feet east of where Ninth street crosses said Olympia avenue, without warning or signal, and without having air or other brakes than hand brakes on said car, ran against said Thomas Bennett, who was on and crossing said Olympia avenue at its said intersection with Ninth street.

"That the aforesaid injuries to the plaintiff were caused by the carelessness, negligence, wilfulness, recklessness and wantonness of defendant, its agents and servants.

"In allowing the car to be run at a rapid and dangerous rate of speed:

"In that, well knowing said crossing to be dangerous and collisions likely to occur thereat, it failed to stop at the Bluff road crossing, as the rules required, thereby enabling the conductor and motorman to get a clear view of and down said Olympia avenue, to and past the Ninth street crossing, and see if it were obstructed.

"In failing to give any signal to warn plaintiff of its approach.

"In allowing said car to be run with worn and defective brakes and appliances for stopping same.

"In that it failed to bring said car to a stop, and avoid running against and injuring said plaintiff.

"In failing to keep a proper lookout down said track, and to have seen the plaintiff, in time to have stopped its car and avoided the injury."

The defendant denied the allegations of negligence and recklessness, and set up as a defense "that on the date alleged, the plaintiff herein walked or crawled out on defendant's track, near its father's residence, and, being a child of only two or three years of age, it assumed a position where it could not be seen until defendant's car was almost upon it, whereby it received some injuries, but defendant does not know the nature or extent of said injuries."

The defendant also set up as a defense the contributory negligence of the plaintiff and his parents, but subsequently withdrew said defense.

The defendant's attorneys presented the following request, which was refused:

"I charge you, there is no evidence, which will justify you in finding any verdict whatever for punitive damages, and, as to this, I direct you to find for defendant."

The jury rendered a verdict in favor of the plaintiff, whereupon the defendant made a motion for a new trial, which was refused, and it afterwards appealed.

The first question presented by the exceptions, which will be considered, is, whether there was error on the part of his Honor, the presiding Judge, in failing to define punitive damages, or to instruct the jury, as to the grounds upon which they could be given.

His Honor, the presiding Judge, after defining actual or compensatory damages, charged the jury as follows:

"Then there is another kind of damage—what is known as vindictive or punitive or exemplary damages; that is, an amount in addition to actual damages, given by way of punishment against the wrongdoer, as a lesson to him and others doing likewise. These kind of damages are called vindictive, punitive or exemplary damages. You have heard it sometimes alluded to as smart money.

"Now, in this case the plaintiff not only sues for actual damages, but sues for vindictive damages, or exemplary damages, or punitive damages, as it is called."

At the close of the charge the defendant's attorney said: "Your Honor has declined my request to direct a verdict there being no evidence at all, as to wilfulness." The request to which he had reference was as follows: "I charge you, that there is no evidence which will justify you in finding any verdict whatever, for punitive damages. * * * "

The following cases show that if the appellant desired, that the instructions should be more specific, they should have been presented as requests to charge: *State* v. *Adams,* 68 S. C. 421, 47 S. E. 676; *Jennings* v. *Mfg. Co.,* 72 S. C. 411, 52 S. E. 113; *Williams* v. *Ry.,* 76 S. C. 1, 56 S. E. 652; *State* v. *Thompson,* 76 S. C. 116, 56 S. E. 789; *Snipes* v. *Ry.,* 76 S. C. 208, 56 S. E. 959; *Morrison* v. *Ass'n,* 78 S. C. 398, 59 S. E. 27; *State* v. *Boylston,* 84 S. C. 574, 66 S. E. 1047; *State* v. *Chastain,* 85 S. C. 64, 67 S. E. 6; *State* v. *Hendrix,* 86 S. C. 64, 68 S. E. 129; *State* v. *Durant,* 87 S. C. 532, 70 S. E. 306.

The next question for consideration is, whether there was any testimony tending to show, that the plaintiff was entitled to punitive damages.

There was testimony to the effect, that the usual speed down Olympia avenue was about fifteen or twenty miles an hour, but that on this occasion the car was running about twenty-five or thirty miles an hour; that it is required by the rules of the company that the car should stop at the Bluff road crossing, but that there was a failure to comply with this requirement; that there was a failure to give any signals, when approaching the crossing at Ninth street; that the car did not have an emergency brake, and that an emergency brake would have enabled the motorman to stop the car more quickly; that the motorman saw the child on the crossing when the car was one hundred feet therefrom, and that it ran about fifty feet beyond the crossing before it stopped; that when running ten miles an hour a car can be stopped in little over a car length, which in this instance was forty-five feet long; that when the car is running twenty miles an hour, it can be stopped in about a car and a half or two car lengths; that the track from Bluff road crossing to Ninth street crossing is level and straight, and that the motorman on that occasion saw persons whom he recognized at Eighth street crossing, which was one block from Ninth street cross, or two blocks from Bluff road crossing. Of course there was contradictory testimony, but this raised a question to be determined by the jury, and not by the presiding Judge.

The rule stated in *Tolleson* v. *Ry.*, 88 S. C. 7, and quoted with approval in *Bennett* v. *C. U. Station Co.*, 90 S. C. 308, is that, "not only is the conscious invasion of the rights of another, in a wanton, wilful and reckless manner, an act of wrong, but that the same result follows, when the wrongdoer does not actually realize, that he is invading the rights of another, provided the act is committed in such a manner

that a person of ordinary prudence would say, that it was a reckless disregard of another's rights."

"The question whether a railroad company owes any duty to an infant trespassing upon its track until it discovers the infant, has given rise to much discussion, and the authorities upon the subject, are in irreconcilable conflict. Even conceding that a railroad company is not bound, as a general proposition, to look out for trespassers upon its track, it nevertheless, is bound to exercise ordinary care in running its trains. The law imposes upon it, the duty of keeping a reasonable lookout for obstructions on its track. The safety of its passengers and the rights of the public generally, demand the enforcement of this rule. It is a general rule of law, that a railroad company is liable in damages, for an injury inflicted by it, when its negligence was the direct and proximate cause of the injury. If the direct and proximate cause of the infant's death, was the negligence of the defendant, in failing to keep a reasonable lookout, and to discover the child in time to have prevented the injury, it is as much liable in damages, as if the proximate cause of the injury had been its negligence, after discovering the child upon its track." *Mason* v. *Ry.,* 58 S. C. 70, 36 S. E. 440, 53 L. R. A. 913.

The exceptions raising this question are, therefore, overruled.

Judgment affirmed.