13925

LEPPARD v. SOUTHERN RY. CO. *ET AL.*

(177 S. E., 129)

*Messrs. Blythe & Bonham* and *Frank G. Tompkins,* for appellant,

*Messrs. Leppard & Leppard* and *J. Robt. Martin,* for respondent,

October 22, 1934.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, which was commenced in the Court of Common Pleas for Greenville County, May 27, 1932, is a suit by Mary Phillips Leppard, as administratrix of the estate of her deceased husband, J. A. Leppard, for the benefit of herself, as his surviving widow, and also for his surviving children, named in the complaint, against the Southern Railway Company and Chalmers Hughes, as defendants, for recovery of damages, on account of the death of the said deceased, alleging, in effect, that the same was caused by the negligence, recklessness, willfulness, and wantonness of the defendants in running a train over him, and thereby causing his death, which occurred January 9, 1932. For the purpose of a clear understanding of plaintiff's contention, as to how her husband was killed, we quote in this connection the following allegations from the complaint: "That on or about the 9th day of January, 1932, plaintiff's intestate and husband, J. A. Leppard, while walking in a southerly direction and upon and along a travelled place on the right of way and abutting the road-bed and track of the said railroad of the defendant, Southern Railway Company, at a point or traveled place distant about one mile south of the City of Greenville, in the county and State aforesaid, became suddenly sick and sank down wholly disabled upon the ends of the crossties of the said railroad track; and that while plaintiff's intestate was upon the said travelled place, upon the said railroad track, totally incapacitated as aforesaid, and while in an utterly helpless physical condition and altogether unable to extricate himself from said dangerous and perilous position, the defendant, Southern Railway Company, its agents, servants and employees, the defendants, Chalmers

Hughes and . . . . . . . . . Robinson, the engineer and fire-man respectively, in the charge, control, custody and management of the locomotive attached to one of the north-bound passenger trains of the defendant, Southern Railway Company, by their joint and concurrent, rash, reckless, wilful and wanton negligence and disregard for the safety of plaintiff's intestate, * * * ran the said locomotive and train attached thereto onto, against and over plaintiff's intestate from behind him, and while he was wholly disabled and unable to escape therefrom, whereby he was struck by said train and his head broken, bruised, crushed and mangled and from which said injuries he subsequently died."

The plaintiff further alleges that the point or traveled place on the railroad in question where the said J. A. Leppard, deceased, was struck by said train and, as a result, died "is situate in a populous and thickly settled cotton mill and suburban settlement of the said City of Greenville, known as Dunean Cotton Mill Heights"; that for a distance of approximately one mile south of said point the said railroad track is in a straight line, and there is nothing which would conceal the view of any part of same; further, that for the said distance of one mile the track and roadbed of said railroad at the place in question is intersected and traversed "by a criss-cross network of traveled places, pathways and crossings, with public highway crossings at each end thereof; that the people of said settlement and the public generally, with the knowledge and acquiescence of the defendant, Southern Railway Company, and its grantors and predecessors in title, the previous owners of said railroad, had so used the said travelled place where plaintiff's intestate was killed for a period of more than twenty years"; and, further, for many years the children of that section, with knowledge and acquiescence of said railroad company, had used the right of way of said railroad, at the place in question, as a public playground, and as a result of which "the defendants well knew that many people of the said

community frequently and habitually travelled in, upon, over and across the said road-bed, track and right of way of said railroad at and near the travelled place where plaintiff's intestate was struck and killed by said train"; that the perilous, also the disabled and helpless physical, condition of the said J. A. Leppard was plainly visible to the engineer and fireman on locomotive of said train for a long distance, approximately one mile, before the train struck him; and the said engineer and fireman either saw or by the exercise of ordinary care could have seen him in time to have stopped the train and avoided striking him, but that the defendants failed and neglected to exercise any care or to slack the speed of and bring the said train under control, after seeing plaintiff's intestate on said roadbed at said point in an apparent helpless condition, "and intentionally, wilfully and with a wanton, rash and reckless disregard for the rights of humanity and the safety of plaintiff's intestate, knowing him to be upon the said road-bed track, ran the said train * * * onto, upon and over the plaintiff's intestate."

The defendants filed a joint answer, and therein entered a general denial, and also pleaded contributory negligence and willfulness. The particular acts of negligence and willfulness alleged against the plaintiff's intestate, as having contributed as a proximate cause, with the alleged negligence and willfulness of the defendants, to produce the death of the intestate, were the following: "That plaintiff's intestate was a trespasser upon defendant, Southern Railway Company's rights of way by placing himself in a dangerous position upon the railroad track; and by lying down upon said track and so placing himself that he could not be discovered in time to avoid collision; by coming on and attempting to use said track as a walkway, while in a drunken condition, and by lying down upon said track in said drunken condition, when he knew, or should have known, that he might become helpless upon the track, and by remaining upon said

track in said condition without exercising any of his faculties for his own safety."

The case was tried at the June, 1933, term of said Court before his Honor, G. Dewey Oxner, and a jury, resulting in a verdict for the plaintiff in the sum of $6,000.00 actual damages and $1,800.00 punitive damages against the Southern Railway Company alone.

A motion for a new trial by defendant Southern Railway Company being refused, from the judgment entered on the verdict for the total amount of $7,800.00 the defendant Southern Railway Company has appealed to this Court.

Appellant's allegations of error imputed to the trial Judge are presented under twenty-four exceptions which we shall discuss, not separately, but under the following heads, suggested by appellant, as covering the questions raised by the appeal:

No. 1.   Did the trial Judge err in excluding, as hearsay, the statements of certain parties?

No. 2.   Did his Honor err in excluding testimony tending to prove the habits of the deceased as a drinking man?

No. 3.   Should the defendants' motions for a nonsuit and directed verdict have been granted?

No. 4.   Did the trial Judge err in charging certain requests of the plaintiff?

No. 5.   Did the trial Judge err in charging the jury that it might consider the financial worth of the defendant Southern Railway Company?

No. 6.   Did the trial Judge err in not sustaining the contention of the appellant that a verdict against one of several defendants sued as joint tort-feasors is a nullity?

Questions 1 and 2, above stated, were raised in the Court below by appellant on the motion for a new trial, and were fully considered and discussed by the trial Judge in the order issued by his Honor in refusing the motions. We fully agree with the holding of his Honor as to these questions, and, in overruling appellant's exceptions

raising these issues, as the reason therefor, we deem it sufficient to simply quote the following portion of his Honor's said order:

"The third ground (upon which this motion for a new trial was based), relates to the exclusion of certain testimony by Mrs. Leppard as to statements made to her by her daughter, Mrs. Pandazedies, about one o'clock as to the condition and conduct of Mr. Leppard around eleven o'clock. (Plaintiff's intestate was killed about 11:45.) It is now urged that these statements were competent (a) as an admission, (b) as a part of the *res gestae*, and (c) on the question of damage. This testimony would not be competent unless admissible under one or more of the exceptions to the hearsay rule. When the question as to the admissibility of this testimony arose during the trial, defendant took the position that Mrs. Pandazedies was in effect a party to this action and any statement made by her would be competent as an admission against interest. I held that it was not competent on this ground and excluded the testimony as hearsay. The record discloses quite a long colloquy between the counsel and the Court as to the admissibility of this testimony, but it was all directed as to its admissibility as an admission. The question as to its admissibility as a part of the *res gestae* was not raised during the trial, but it is now being urged on the motion for a new trial.

"Assuming that the status of Mrs. Pandazedies as one of the beneficiaries in behalf of whom this action was brought is the same as if she were a party to this action (which question I do not deem it necessary to pass upon), I do not think under the circumstances presented that these statements could properly be received on the ground of an admission against interest. There is no separate award by the jury as to the beneficiaries. There is one judgment and the statute fixes the distribution. Consequently such admission could not be received as only affecting the party making it. If admitted, it would have to be admitted as to all and would nec-

essarily prejudice the interest of the other beneficiaries. The following language of the Court in *Windham v. Howell*, 78 S. C., 187, page 195, 59 S. E., 852, is applicable:

" "The general rule undoubtedly is that the declarations or admissions of a party to a suit may be given in evidence by the adverse party as against all associated with the declarant by joint interest or privity of design or combination. It is also true, as a general rule, that the admission of a party may be given as evidence by the adverse party as against the declarant. But this latter rule does not apply when the effect of the declarations or admissions must necessarily be to prejudice the several and independent interests of those against whom such declarations are not directly admissible, and the case is such as will not permit the admissions to operate to the prejudice of the declarant alone.'

"Also, to the same effect: *Dillard v. Dillard*, 2 Strob., 89, *Gray's Adm'rs v. Cottrell*, 1 Hill, 38. Also, the following from 22 C. J., 348:

" 'Where, however, the interests of co-parties are all dependent upon the existence of a particular fact, the admission of one of them regarding such fact cannot be received, because it could have no effect as to himself without affecting the others.'

"The question as to the admissibility of these statements as a part of the *res gestae* having not been raised on trial, I do not think it can now be raised. However, I have carefully considered the arguments and the authorities cited on this ground and I do not think this testimony admissible as part of the *res gestae*.

"Having reached the conclusion the testimony was properly excluded, it could not be received on the question of damages.

"The fourth ground relates to the exclusion of certain testimony by Mrs. Lollis as to statements made to her by Miss Daisy Leppard about one hour before plaintiff's intestate was killed. This ground involves substantially the same ques-

tion as the third ground and for the reasons above set forth I do not think there was error in excluding same.

"The fifth and sixth grounds relate to the exclusion of certain testimony by the witness Craigo and others who would have testified to like purport. While there are some authorities to the contrary, a large number of the Courts from other jurisdictions held that evidence of the habitual use of intoxicants by the deceased is competent on the question of earning capacity and the extent of the support which deceased rendered his family. These decisions rest upon the fact that the loss of support of a husband or father who was an habitual drunkard would be quite different from that of one who was sober and industrious. No cases on this question from this State were cited, nor have I found any bearing directly upon it.

"The testimony of the witness Craigo was directed to a specific instance in which the witness stated he observed the deceased drinking and engaged in boisterous conduct. He testified that he had never seen the deceased drunk on any other occasion. Obviously, he was not qualified to testify as to whether the deceased was addicted to the habitual use of intoxicants to the extent of interfering with his earning capacity. I stated when this testimony was offered that I would admit testimony as to the habits of the deceased in the use of intoxicants, but did not think isolated instances of the use of intoxicants could be shown. Upon this ground I excluded this testimony. There was no dispute as to the fact that the deceased drank.

"The question involved, therefore, is whether or not the defendant should. have been permitted to show specific instances or occasions on which plaintiff's intestate was seen intoxicated. I do not think this was competent. It does not follow because a person is occasionally observed under the influence of intoxicants that he is an habitual drunkard. In cases of this kind plaintiff should not be required to come prepared to answer for every particular act of her intestate's

life. She should only be required to answer as to his habits generally in the use of intoxicants, and as to whether or not they went so far as to interfere with his earning capacity."

The exceptions imputing error to the trial Judge in excluding testimony are overruled.

As to the allegations of error imputed to the trial Judge in overruling the motions for a nonsuit and directed verdict, the same, in our opinion, cannot be sustained. The motion for a nonsuit was based upon the following grounds:

"1st. Upon the ground that there is no testimony tending to sustain the material allegations of the complaint.

"2nd. Upon the ground that there is no evidence of recklessness, wantonness or willfulness on the part of the defendants or either of them.

"3rd. Upon the ground that there is no testimony to be submitted to the jury tending to show actionable negligence on the part of the defendants or either of them.

"4th. That the evidence is susceptible of no other inference than that the plaintiff himself was guilty of negligence, reckless conduct, which contributed to his death as a proximate cause thereof."

The motion for direction of a verdict was based upon the same grounds as the motion for nonsuit and also upon the following additional grounds: "That the uncontradicted testimony in the case now discloses that the train crew did not discover and could not have discovered the deceased in a helpless condition in time to have stopped the train; and that as soon as he was discovered and could have been discovered they exercised every precaution and every faculty within their power to prevent injuring him."

In considering the exceptions raising this question, we have carefully read the testimony in the case, consisting of about 250 pages of the transcript, and we are of the opinion that the trial Judge was right in overruling the motions. While, as usual in such cases, the testimony adduced on the

trial of the case is in conflict, we find some testimony tending to establish every material allegation of the complaint. There is testimony disclosed by the record which tends to show that the plaintiff's intestate was on the railroad track in question in an apparent helpless condition at the time of his alleged injury. As to how long he had been there in such condition and whether he was seen by those in charge of and operating said train in time to have stopped said train and prevented his injury and resultant death, and whether the said employees exercised that degree of care and caution required under the circumstances were, as well as all other material issues raised by the pleadings, questions for the jury, and, in our opinion, the trial Judge committed no error in overruling the motions.

In appellant's allegation of error imputed to the trial Judge regarding the charge to the jury, the contention is made that his Honor erred in charging the following request of the plaintiff: "It is true, a drunken person would not be run over by a car unless he were on the track, yet, the fact alone that a person is on a railway track at a traveled place, in an apparently helpless condition, need not necessarily be contributory negligence. Nor will it necessarily defeat him from recovering damages for his injuries, for if that were the law then no apparently helpless person from drink or other cause on a railway track, could recover damages; in such cases the law does not bar the person from damages, even though his presence on the track in an apparently helpless condition be due to negligence on his part, for if the jury further believes from the evidence that notwithstanding such person's negligence, the defendant could have avoided the injury by exercising due diligence in performing his duties, and in keeping a reasonable lookout ahead so as to discover him in time to avoid injuring him, but failed to do so, then if such failure of the defendant's agents, and not the negligence of the person injured, formed the main and proximate cause of the injury, without which

it would not have happened, the railroad company would be liable in damages."

We have considered this request, which his Honor charged in connection with the charge as a whole, and we are satisfied that the jury was not misled and the defendants were not prejudiced. In this connection we call attention to the fact that there was testimony adduced on the trial of the case tending to show that the roadbed and track in question, where the deceased was injured, for a distance of about a mile through that settlement, is intersected and traversed by a network of traveled places, pathways, and crossings, with public highway crossings, and that the people of that settlement and the public generally, with the knowledge and acquiescence of the appellant Southern Railway Company, had so used it for as long as twenty years. At least, that is one reasonable inference to be drawn from the testimony.

Appellant also imputes error to the trial Judge in charging the following request of the plaintiff: "An act may be willful when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say it was in reckless disregard of another's rights."

The decisions of this Court sustain the trial Judge in charging the request. See the following cases to which our attention has been called: *Tolleson v. Southern Railway Company*, 88 S. C., 12, 70 S. E., 311; *Bennett v. Union Station Co.*, 90 S. C., 311, 73 S. E., 340; *Bennett v. Railway, Light & Power Co.*, 92 S. C., 72, 75 S. E., 277; *Burgess v. Tucker*, 94 S. C., 311, 77 S. E., 1016; *Eberle v. Railway*, 98 S. C., 96, 79 S. E., 793; *Grainger v. Railway*, 101 S. C., 86, 85 S. E., 231; *Piero v. Southern Express Company*, 103 S. C., 478, 88 S. E., 269; *Norris v. Railway*, 111 S. C., 322, 97 S. E., 848; *Bailey v. Smith*, 132 S. C., 224, 128 S. E., 423.

Another allegation of error imputed to the trial Judge is charging the following request of the plaintiff regarding the award of punitive damages: "Punitive damages are awarded not only to compensate but to punish for acts consciously invading the rights of another and as a warning to deter the wrongdoer and others from committing similar wrongs in the future. Punitive damages are left entirely to the sound discretion of the jury Since punitive damages, as the word implies, are to punish, in awarding such damages you should take into consideration the ability to pay, the worth of the individual or corporation against whom such damages are awarded. The same amount awarded against an individual or corporation of worth might prove of little or no benefit to the public, while against another individual or corporation of little or no worth might prove excessive."

It is the contention of appellant that it was error to charge this request, for the reason that it was not responsive to any evidence in the case; that no testimony was introduced as to the worth of the appellant. The recent case of *Johnson v. A. C. L. Railroad Company, et al.,* 142 S. C., 157, 140 S. E., 443, sustains the action of the circuit Judge in charging the request. The exceptions raising this question must therefore be overruled.

Another question raised by appellant is that the circuit Judge erred in charging the jury relative to finding a verdict against one of the defendants alone and in failing to set aside the verdict on the motion for a new trial upon the ground that the jury having found a verdict against one of the alleged joint tort-feasors and not against the other, the verdict could not stand. The charge complained of in this respect was the following: "Your verdict may be for plaintiff against both defendants, the railway company and Hughes, or it may be against the railway alone. If you conclude from the evidence that. the plaintiff is entitled to recover and that the death was caused by the sole negli-

gence or recklessness of the engineer, then it would be your duty to find against both defendants, but if the railroad was negligent and reckless in other respects or by other agents than through engineer, then a verdict against the railroad alone may be found. If you find the plaintiff is entitled to recover and such finding is predicated upon negligent and reckless conduct of the fireman, as alleged in the complaint, then you may find for the plaintiff against the railroad alone."

The exceptions charging error in refusing to grant a new trial in this respect, read as follows:

"Because the verdict against the Southern Railway Company alone is a nullity for the reasons that the complaint states only a cause of action based upon the alleged joint and concurrent negligence of the Southern Railway Company and its co-defendant Chalmers Hughes, and the verdict against the Southern Railway Company alone negatives the theory of joint and concurrent tort.

"Specification: The plaintiff having elected to sue the defendants upon their joint liability the only theory upon which they could be sued jointly, in the same complaint; and the jury, by its verdict, having excluded the theory of joint liability, the verdict against the Southern Railway Company alone on its several liability could not stand.

"Because the Court erred in not dismissing the action against the Southern Railway Company upon the ground stated by its tenth ground of motion for new trial, to-wit:

"Defendant Southern Railway Company now moves the Court to dismiss this action upon the ground that the verdict against said defendant is a nullity, for the reason that the Complaint states only a joint and concurrent cause of action and the verdict of the jury against defendant Southern Railway Company alone negatives the theory of a joint and concurrent tort and the discharge of the engineer Hughes discharged also defendant Southern Railway Company.

"Specification: The complaint states only a cause of action based upon the joint liability of the two defendants. The verdict against one of the joint tort-feasors eliminates the theory of joint liability and is an adjudication to the effect that no joint cause of action has been established. The discharge of one joint tort-feasor, sued jointly with another, in a cause of action based on joint liability, discharges the other."

We are unable to sustain appellant's position. While the defendant Hughes, engineer on said locomotive, was sued as a joint tort-feasor with the Southern Railway Company, the plaintiff, under the allegations of her complaint, in effect, asked not only to hold the Southern Railway Company for the acts of negligence and recklessness of the engineer, Hughes, but also on account of the alleged acts of negligence, willfulness, etc., of the Southern Railway Company generally, and named its employee Robinson, fireman on said locomotive, as having been guilty of negligence, recklessness, etc., in connection with the alleged injury and resultant death of the plaintiff's intestate. Under the testimony the jury could have reasonably reached the conclusion that the negligent, willful, and wanton acts of Robinson, the fireman, in not keeping a proper lookout on his side of the railroad track and not promptly notifying the engineer of the intestate's apparent helpless and perilous position, caused his injury and resultant death. The deceased, according to testimony in the case, was seen, before and after his death, on the fireman's side of the railroad track, and probably was seen by the fireman before he was seen by the engineer, and, under the testimony, the jury was warranted in reaching the conclusion that the failure of the fireman to act with that degree of care and promptness required under the circumstances of the case in notifying the engineer so that he (the engineer) could have stopped the train in time to avoid striking the deceased caused the injury and resultant death of the deceased. The ruling of the circuit Judge is sustained

by the following cases: *Rhodes v. Southern Railway Company, et al.,* 139 S. C., 139, 137 S. E., 434; *Weeks v. Carolina Power & Light Company e tal.,* 156 S. C., 158, 153 S. E., 119.

While we have not herein discussed every position advanced by appellant in connection with the exceptions, we have, in reaching a conclusion, duly considered the same, and it is our opinion that the appellant was given a fair and impartial trial under the law governing the case.

It is therefore the judgment of this Court that the exceptions be and are hereby overruled and the judgment of the lower Court affirmed.

Mr. Chief Justice Blease and Mr. Justice Bonham concur in result.

Mr. Justice Stabler concurs.