16741

LANFORD v. WEST OAKWOOD CEMETERY ADDITION, INC.
(75 S. E. (2d) 865)

*Mr. Arnold R. Merchant,* of Spartanburg, *for Appellant,*

*Mr. Jesse W. Boyd,* of Spartanburg, *for Respondent,*

May 11, 1953.

BAKER, Chief Justice.

This is an action in tort for actual and punitive damages, and stems from the facts hereinafter related.

The appellant, Mrs. Sophie M. Lanford, is the adopted daughter of the late Mr. and Mrs. John T. Moreland, and therefore the niece of R. A. Moreland, a brother of John T. Moreland. Under the wills of the said John T. Moreland and R. A. Moreland, appellant became the owner of two burial lots in a cemetery at Spartanburg, S. C., which burial lots consisted of the northern and southern one-half of Lot

32 in Section 1, on a plat of the cemetery of respondent corporation, and will hereafter be referred to as one lot, which in fact it is. The original deeds for this lot, the northern one-half and the southern one-half being conveyed by separate deeds, were never recorded and had become lost, so on June 1, 1940, respondent made, executed and delivered another deed for the above described lot, but this deed was also never recorded.

There were spaces for eight graves on this lot, three of which spaces had been used for the burial of Mr. and Mrs. J. T. Moreland, appellant's adoptive parents, and her adoptive uncle, R. A. Moreland, leaving five spaces all in the same lot where it was planned for the future that appellant and her husband, their married daughter and her husband and a daughter, would be interred so that the entire family would be buried close to each other and in the same lot.

For some unexplained reason the books of the respondent did not reflect that the southern one-half of Lot 32 had been sold, although respondent frankly admits that it had sold both the northern and southern half of this lot and collected therefor the sum of $187.50 each, or a total of $375.00 for the entire lot, and that appellant was the owner of the entire lot. On or about the 10th day of November, 1947, the respondent sold and conveyed to Mrs. I. C. Arledge two burial spaces on the southern half of Lot 32, and her husband was then buried in one of these spaces; and on April 18, 1951, respondent sold and conveyed to R. L. Moore the two remaining burial spaces on the southern half of Lot 32, and his sister was buried in one of these spaces. Thus all burial space on the southern half of appellant's lot was again disposed of and collected for by the respondent. The other burial space sold to Mrs. Arledge was where she anticipated being buried at her death, and the other burial space sold to Mr. Moore was where he intended burying his mother when she passes away. A monument has been placed at the Arledge grave and markers at the grave of the sister of Mr. Moore.

When it came to the attention of appellant that people with whom she had no connection had been buried on the southern half of her lot, which was some time in the summer of 1951, she immediately took the matter up with the officers of respondent.

We assume from the record that Mrs. Elsie Anderson, president of respondent, is the owner of practically all of the stock of respondent corporation, and as such undertook with apparent full authority to act for the respondent corporation, to rectify as much as is possible the grave injustice to the appellant which had been brought about by the acts of the respondent hereinbefore related. A meeting at the cemetery between Mrs. Anderson and appellant was arranged for, and at this meeting Mrs. Anderson offered to procure the consent of the parties to whom the burial spaces had been sold to move their dead, and failing in this to give to appellant another burial lot which was close to the northern one-half of Lot 32, neither of which propositions appealed to the appellant. Mrs. Anderson testified that she also offered to refund the $187.50 which had been paid for this one-half of Lot 32, but admitted that it had advanced in price, and was sold the second time for a total of $200.00. Notwithstanding this respondent procured the consent of Mr. Moore to move the body of his sister to another burial space, and the consent of Mrs. Arledge to move the body of her husband if she would wait until after the anniversary of his death; and of course also move the monument and markers hereinbefore referred to. However, appellant objected to being herself buried, or having any of her family buried in a grave space which had formerly been occupied by some other dead body. And in the meanwhile, Mrs. Arledge withdrew her consent to having the body of her husband, and the monument which had been erected, moved when she learned of the aversion of the appellant to either herself or any member of her family being hereafter buried therein, that is, in a grave which had been occupied by another body, and of her position that the southern half of the lot had, by rea-

son of the matters hereinbefore stated, become valueless to her as a place of burial for herself and family. This action for damages, actual and punitive, followed.

Upon the trial of the case, the trial Judge granted a motion of the respondent for a direction of verdict as to punitive damages, and in submitting the issue of actual damages to the jury, instructed them that mental anguish would be an element which they could consider in arriving at the amount of their verdict, if they decided in favor of the plaintiff (appellant).

The jury returned a verdict in favor of the appellant in the amount of $1,000.00. Whereupon, the respondent moved for a verdict *non obstante,* and failing in that for a new trial. Following the argument of these motions, the trial Judge granted the portion thereof seeking a new trial solely on the ground that mental suffering or mental anguish was not an element of actual damages, but in order to recover therefor there must have been evidence of wilfulness, wantonness, or maliciousness, which he had ruled out when he directed a verdict as to punitive damages.

The appeal to this Court is from the order granting a new trial, and the appellant states the "Questions Involved" which we take from her brief:

"Was it error to submit to the jury, as an element of damages suffered by the Plaintiff, the question of mental suffering, in a cemetery case of this nature?

"If the court erroneously directed a verdict for the Defendant as to punitive damages was the Court then justified in submitting to the jury, the question of mental suffering as an element of damages suffered by the Plaintiff?"

There is no counter-statement of the "Questions Involved" contained in respondent's brief, nor does its brief challenge those of the appellant. Therefore, the only issues before the Court are those stated by the appellant. Section 4 of Rule 8 of the Rules of The Supreme Court.

While appellant's exceptions allege error on the part of the trial Judge in holding that the respondent, as a matter of law, was not guilty of wilful, wanton and malicious conduct, and granted its motion for a direction of verdict as to punitive damages, yet in her printed brief, after quoting from that portion of the opinion in *Leppard v. Southern Railway Co.*, 174 S. C. 237, 177 S. E. 129, which commented favorably upon, and overruled the exception to the charge of Judge Oxner (then a Circuit Judge, now Associate Justice of this Court) to the jury in which Judge Oxner charged: "An act may be wilful when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say it was in reckless disregard of another's rights," states her position as follows:

"It is very clear that the above quotation from Judge Oxner's charge is the well settled law of this state. Therefore Judge Littlejohn should have submitted to the jury the question of willfulness and wantonness of the acts of the defendant in this case. It was for the jury to decide from all the facts and circumstances of this case whether a reasonable and prudent person would have said that the acts of the defendant through its agents and servants were such a reckless disregard of the rights of the plaintiff as to be wilful and wanton. It is the contention of the plaintiff that they were. If this be true the plaintiff was entitled to have submitted to the jury the question of punitive damages and certainly the mental suffering of plaintiff is an element of actual damages in such case. *The plaintiff does not ask for a new trial because of the error of the trial judge but asks that this Court set aside the order granting a new trial and allow the verdict of the jury to stand and become the judgment of this Court.* The defendant has no right to complain of the error of the Court in this particular because the error was to the benefit of the defendant. *The plaintiff does not request a new trial for this reason or for any other reason.* The defendant has not been prejudiced either by the failure of the

Judge to submit to the jury the question of punitive damages or by the Judge's submission to the jury the question of mental suffering of the plaintiff." (Emphasis added.)

In the light of the position taken by the appellant ██ that she does not desire a new trial, even though the trial Judge committed error in granting the motion of respondent for a direction of verdict as to punitive damages, if the verdict rendered by the jury in which it was allowed to consider mental anguish or mental pain and suffering as an element of actual damages can be sustained, then in our view of the case, it is unnecessary for us to pass upon whether the trial Judge erred in the direction of such verdict. And especially is this true under the appellant's statement of the "Questions Involved." We will therefore pass only upon the issue whether, under the circumstances of this case, mental anguish is an element of actual damages. We quote with approval the following statement of law which is taken from *Shuler v. Heitley*, 209 S. C. 198, 202, 39 S. E. (2d) 360, 361.

"Mental pain and suffering in connection with a wrong, which apart from such pain and suffering constitutes a cause of action, is a proper element of actual damages where it is the natural and proximate consequence of the wrong. Where an allowance is made for mental pain and suffering, it is as an element of compensatory as distinguished from exemplary damages."

It cannot reasonably be contended that mental anguish would not be the natural and proximate consequence of the grievous wrong committed by the respondent against the appellant in the sale of the southern one-half of her burial lot to others, and burial of their kin thereon, thus depriving her of the use thereof. This plot of land had considerable more than a monetary value to appellant, and the loss to her of this portion of her lot is irreparable, and depreciates the value of the northern one-half of her lot in so far as she is concerned.

A cemetery plot where one has his close kith and kin buried occupies an entirely different status from that of any other plot or piece of land which one could own, and from time immemorial, has been looked upon as hallowed land; and it is but natural that a family desires to be buried in the same burial plot. Bodies are quite often shipped hundreds, and sometimes thousands of miles so that their last resting place can be in the family burial plot of their mothers and fathers, if dead, and if living, where the mother and father will be buried. Sufficient size burial lots or plots are purchased with such intention, just as was the lot here, and when either a corporation or individual engages in the business of selling burial lots or plots by map or otherwise, and by a negligent act defeats the very purpose for which such lot or plot was purchased, such individual or corporation will not be heard to say that mental anguish is not an element of actual damages suffered.

The order appealed from is reversed and the case remanded for entry of judgment for the appellant in the amount found by the jury.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.